Amy B. Vandeveld, State Bar No. 137904
LAW OFFICES OF AMY B. VANDEVELD
1850 Fifth Avenue, Suite 22
San Diego, California  92101
Telephone:  (619) 231-8883
Facsimile:  (619) 231-8329

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURIZIO ANTONINETTI,<br><br>Plaintiff,<br><br>vs.<br><br>CHIPOTLE MEXICAN GRILL, INC. and DOES 1 THROUGH 10, Inclusive,<br><br>Defendants. | Case No.: 05 CV 1660 J (WMc)<br><br>**PLAINTIFF'S *REPLY* MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *REPLY* TO CHIPOTLE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:         June 4, 2007<br>Time:        9:00 a.m.<br>Courtroom:  12<br>Judge: The Honorable Napoleon A. Jones, Jr. |

Plaintiff, MAURIZIO ANTONINETTI, (hereinafter "Plaintiff"), hereby submits the following Memorandum of Points and Authorities in Support of his Reply to Chipotle's Opposition to Plaintiff's Motion for Summary Judgment.  Plaintiff's Reply is based upon this Memorandum of Points and Authorities, as well as all other pleadings, declarations and other evidence filed in Opposition to Chipotle's Motion for Summary Judgment or, in the alternative, Summary Adjudication.

///

///

///

I.

**DEFENDANT HAS FAILED TO ESTABLISH
A DISPUTE OF MATERIAL FACT**

To successfully defeat a motion for summary judgment, the opposing party must show that pleadings, depositions and discovery responses, together with any affidavits, establish that there is a genuine issue of *material* fact. F.R.Civ.P. Rule 56(c). "Material facts" are those which, under applicable substantive law, may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 US 242.

Although Chipotle claims that numerous facts are "disputed", the "evidence" offered by Chipotle does not refute the factual assertions by Plaintiff at all. It should be noted that the vast majority of the evidence offered by Plaintiff is testimony from Chipotle's own managers and Persons Most Knowledgeable (PMKs), excerpts from Chipotle's own training manual (" the Know") and Chipotle's own website. In an effort to raise a "dispute of fact", Chipotle points to other deposition testimony of its witnesses that, even if accepted as true, does not contradict Plaintiff's assertions, as discussed more specifically in Plaintiff's *Reply* to Chipotle's Response to Plaintiff's Separate Statement of Uncontroverted Facts, filed separately herewith. below. Chipotle also relies on its legal arguments relating to "lines of sight", which are not facts and which, therefore, cannot raise a dispute of fact.

II.

**DEFENDANT'S NARROW READING OF
SECTION 4.33.3 SHOULD BE REJECTED**

Chipotle argues that the language of Section 4.33.3 should be narrowly read to apply just to fixed seating locations, when no such limitation actually exists in the language of the Standard. Instead, the language is more properly interpreted, in keeping with the broad purpose of the ADA and the expansive definition of "Assembly Area", as follows:

1)    If fixed seating is provided, then wheelchair locations shall be integral to the seating plan. They shall also have fixed companion seats and be on an accessible aisle.

2)    If different admission prices are charged, then wheelchair locations shall be

provided so as to provide people with physical disabilities a choice of admission prices.

    3)    If lines of sight are provided or necessary, then wheelchair locations shall be provided so as to provide people with physical disabilities comparable lines of sight to those for members of the general public.

Clearly the requirement that wheelchair areas be integrated into fixed seating is necessary because the construction is permanent. This element must be incorporated into the original design. Such a requirement is not necessary or even possible in places with no seating because wheelchair users are free to move about and to integrate themselves. If moveable seats are provided, they can be moved to allow wheelchair users to integrate into the "seating area."

Plaintiff's suggestion of a broad interpretation of 4.33.3 and its application to restaurants is not based solely on the language of Section 5.1, as urged by Chipotle. It is also based upon the fact that Section 4.33 is entitled "Assembly Areas", which the Department expended effort to specifically define. It should be kept in mind that Section 4.33 is the ONLY Standard which specifically refers to Assembly Areas - therefore, the definition must have special meaning.

The definition includes not just spaces for amusement purposes, it also includes places for educational, social and political purposes. These descriptions might include stadiums and theaters (for example, a showing of "An Inconvenient Truth" at a movie theater might be considered an "educational purpose".) But the definition of Assembly Areas is not limited to places with fixed seating. It includes convention centers and museums, where fixed seating is rarely, if ever, found. If the definition of "Assembly Areas" is to be given any meaning, Section 4.33 must be read to apply its requirements (including Sec. 4.33.3) to ALL of the places and spaces that could fall within its definition, including restaurants.

More importantly, Section 5.1 and Section 4.33 cross-reference each other! Section 5.1 incorporates Sections 4.1 through 4.35. Section 4.33 relates to "Assembly Areas", which *specifically* includes restaurants in its definition! It could not be more clear that the drafters of the ADAAG intended to apply Section 4.33.3 to restaurants.

Reading Section 4.33.3 as suggested by Chjpotle effectively negates the definition of "Assembly Area", since

## III.

## **THE *CIOTTI* RULING IS MISPLACED**

With all due respect to plaintiffs' counsel in *Ciotti v. Chipotle Mexican Grill, Inc.*, Case No. 1:07cv161, Mr. Weintraub did not clearly address the interplay between "Assembly Areas" and Sec. 4.33.3. Judge Leonie's ruling failed to address these legal issues and, respectfully, is wrong. She also appeared to base her opinion, in part, on the contention that people of short stature could also not see the food viewing counter. This line of thought should be flatly rejected by this Court. A similar argument was raised in *Miller v. The California Speedway Corp.,* 453 F. Supp. 2d 1193, 1204 (C.D. Cal. 2006):

> One argument raised at the hearing on this matter by defense counsel cannot pass without comment. Defense counsel's efforts to conflate the position of a wheelchair-bound quadriplegic with, to use counsel's phrase, a "height-disadvantaged" person such as herself, is not persuasive. Counsel's argument focuses solely on the height differential between individuals who use wheelchairs for mobility and ambulatory individuals; however, "height-disadvantaged ambulatory individuals have options that are not available to those who must use wheelchairs. Cf. Independent Living, 982 F.Supp. at 733 ("[A]mbulatory patrons can move around or angle their bodies to obtain a better view, or stand on their chairs. Small children may be held aloft by their parents... While some ambulatory spectators occasionally have an obstructed view, that experience is the rule, rather than the exception, for those who attend Rose Garden events in a wheelchair. It is no answer to say that some ambulatory spectators may also have obstructed sightlines."). Moreover, the height differential which counsel references is not nearly as pronounced as that experienced by a person who must sit in a place where other adults--short and tall alike--may stand to their full height or may maneuver their bodies to gain maximum visual access.

It should also be noted that, while Judge Leonie dismissed the plaintiffs' claims which were based upon Section. 4.33.3 with prejudice, she also allowed the plaintiffs to amend their complaint to state claims under the general anti-discrimination provisions of the ADA.

In the event this Court determines that Section 4.33.3 is inapplicable, Plaintiff is still entitled to summary judgment in his favor because the construction of a wall in front of an otherwise accessible counter renders the benefits, advantages and accommodations at that food viewing counter inaccessible to people in wheelchairs.

## IV.

# THE "PARADE OF HORRIBLES" ONLY RESULTS FROM A NARROW READING OF THE ADAAG AND ADA

Chipotle's reference to a "parade of horribles" (Opp. Brief, Docket No. 109, 7:16) is an accurate description of the travesty that would result if Section 4.33.3 were narrowly read to exclude those "Assembly Areas" where lines of sight are integral to the goods, services or benefits provided by the accommodation but where fixed seating is not provided: museums, galleries, zoos, amusement parks, etc.

A narrow reading of Section 4.33.3 would also vitiate any point of including museums, galleries, zoos, etc. in the definition of "public accommodation", since the main purpose of these places is to provide things to be seen and viewed by the public!  Making the line-of-sight requirement inapplicable to these facilities would render moot any other access obligations.  Why provide an accessible path of travel to an exhibit that is blocked by a four foot wall?  Why provide accessible bathrooms at the zoo if all of the animals are hidden behind walls or windows that allow only standing patrons to view the animals?

While Chipotle argues that it is "not a museum", that is not the point.  Rather, like a museum, like a gallery, Chipotle provides an experience that is *intended* to be viewed by its customers.  It is not happenstance that Chipotle put the food bins on counters close to the ordering line.  It is not happenstance that Chipotle included a transparent sneeze guard in its design of the offending wall.

To the contrary, Chipotle intentionally advertises that its restaurants are unique because customers get to watch while their food is made.  Chipotle intentionally trains its employees to ensure the food appears fresh because simply viewing food can effect a customer's dining experience.  Chipotle even tells its crew to make burritos a certain way so that the customer can see the "burrito being built."

If viewing the food selection and preparation was not important, Chipotle could have constructed a wall six-feet high that would have still provided protection for the food, but which would have excluded everyone from the "Chipotle experience", not just wheelchair users.

If the Court determines, however, that Section 4.33.3 does not apply line-of-sight

requirements to "Assembly Areas" other than theaters and stadiums with fixed seating,

## V.
## **CONCLUSION**

Because no genuine issue of material fact exists with respect to Defendant's failure to comply with the ADA and/or California disabled access laws, and because either Section 4.33.3 of the ADAAG and/or the general anti-discrimination statutes require that Mr. Antoninetti be provided an equal opportunity to participate in the Chipotle experience, which was denied to him, he is entitled to summary judgment in his favor on all Claims.

DATED: May 25, 2007         LAW OFFICES OF AMY B. VANDEVELD

 s/ AMY B. VANDEVELD
Attorney for Plaintiff
Email: abvusdc@hotmail.com