Amy B. Vandeveld, State Bar No. 137904
LAW OFFICES OF AMY B. VANDEVELD
1850 Fifth Avenue, Suite 22
San Diego, California 92101
Telephone: (619) 231-8883
Facsimile: (619) 231-8329

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURIZIO ANTONINETTI,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CHIPOTLE MEXICAN GRILL, INC. and DOES 1 THROUGH 10, Inclusive,<br><br>　　　　Defendants. | Case No.: 05 CV 1660 J (WMc)<br><br>**PLAINTIFF'S *REPLY* TO CHIPOTLE'S RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS**<br><br>Date:　　　June 4, 2007<br>Time:　　　9:00 a.m.<br>Courtroom: 12<br>Judge: The Honorable Napoleon A.<br>　　　　　Jones, Jr. |

　　　Plaintiff, MAURIZIO ANTONINETTI, (hereinafter "Plaintiff"), hereby submits the following Reply to Chipotle's Response to Plaintiff's Separate Statement of Undisputed Facts. Plaintiff uses this format, rather than appending to Chipotle's Response, in an effort to provide the Court with a more wieldy document.

## I.

## UNDISPUTED FACTS

　　　Chipotle does not dispute the following facts: SSUF Nos. 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 13, 14, 15, 41, 42, 43, 44, 49, 50, 53, 55.  SSUF 10 is disputed only as to the date in 2002 on which the restaurant first opened.  Plaintiff accepts the date offered by Chipotle.  These uncontroverted facts establish:

///

- Mr. Antoninetti is disabled. (SSUF 55).
- Chipotle is a public accommodation and the subject restaurants were constructed and opened for first occupancy after 1993. (SSUF 9, 10)
- The Chipotle restaurants are similar in design with respect to the food viewing counters and the transaction counters. (SSUF 11, 13, 14, 15)
- All Chipotle restaurants have 44-inch high walls with sneeze guards held in place by 2-inch metal strips.
- Standing customers can see through the sneeze guard to the food preparation area. (SSUF 44)
- The average eye level of people in wheelchairs is between 43 and 51 inches from the finished floor. (SSUF 49)
- Antoninetti's eye level is 45 inches from the finished floor. (SSUF 48)
- The food preparation counters, on the crew side of the wall are approximately 34 to 35 inches from the finished floor. (SSUF 43)

## II.

## DEFENDANT HAS FAILED TO ESTABLISH A DISPUTE OF MATERIAL FACT

**A.    "The Know".**

Chipotle fails to offer any evidence that actually controverts Plaintiff's assertions in SSUF 8. Simply stating that "not all of the information in the Know is shared with crew members" does not controvert the Plaintiff's contention that all of the information in the Know *relating to customer service* is shared with crew members. In fact, Plaintiff's statement of fact is further buttressed by the deposition testimony of Ron Sedillo, Chipotle's PMK re: Training. He testified, consistent with Mr. Cieslak, that the information in the Know is expected to be passed on to the crew through the manager and assistant manager by "shoulder-to-shoulder training", including information about customer service. (Please see Plaintiff's Supplemental Separate Statement of Uncontroverted Facts filed herewith (hereinafter "SSSUF") No. 84). Chipotle cannot establish a "question of fact" by refuting the testimony of its own PMK.

Thus, SSUF 8 is uncontroverted.

///

///

1  **B.     The Opportunity to Order by Fax and Online Does
           Not Negate that In-Store Customers Have the Opportunity
2          to Participate in the "Chipotle Experience."**

As support for its claims that various facts are "disputed", Chipotle submits evidence that customers can order from the menu board, by fax or online. Chipotle adds the argument, in response to other facts, that "seeing the food is one part of the experience, but not the entire experience." Chipotle also makes the legal argument that lines of sight to the food viewing counter are not legally required for people with disabilities. (SSUF 12, 16, 17, 19, 20, 26, 27, 28, 29, 31, 32, 33, 35, 36, 45, 46, 51 and 52.)  None of this proffered "evidence" refutes any of the factual assertions made by Plaintiff in each of the above-listed Uncontroverted Facts.

Even if it is true that food can be ordered online or by fax (not disputed by Plaintiff), the existence of those ordering methods does not negate the fact that Chipotle offers a benefit not available to people in wheelchairs - the opportunity to see, judge the freshness of ingredients, select and direct the making of their entree inside the restaurants.  Vons grocery stores allow purchases online at Vons.com, including the purchase of fresh produce.  Clearly most people go into the store to personally select their produce so that they can then judge the freshness of the items and, for example, compare the spinach to the broccoli, or determine if the asparagus is thick or thin-stalked.  Indeed, some people actually enjoy produce-shopping in person.  Denying them that experience simply because they use wheelchairs, and "online purchase is available", is clearly discriminatory.  Chipotle's argument is no less offensive.

Even though customers have the option of ordering by fax or on-line, this ancillary fact does not negate the facts that: in-store customers first encounter the tortilla station (SSUF 12); Chipotle employees are taught that customers like to watch closely as their food is being made (SSUF 16); customers get to follow their burritos and direct what goes into their burritos (SSUF 17); burritos are made in front of the customers as they see, select and direct the making of their burritos (SSUF 19, 20 ); Chipotle employees are taught that appearance of the food is important (SSUF 26);  people "eat with their eyes" (SSUF 27); regular inspections are performed to ensure the food is up to Chipotle standards (SSUF 28);  burritos are built so customers can see them being built (SSUF 29), or any of the other factual assertions Chipotle attempts to negate with this

"evidence". (SSUF 31, 32, 33, 35, 36, 45, 46, and 51)

Moreover, Chipotle never directly refutes that seeing the food is an important part of the "Chipotle experience." Instead, it merely argues that seeing the food is just "one important part". That is like disputing that a car's engine is an important part of the "driving experience" because there are "other important parts", like the steering wheel and tires and seats.  The fact that there are other important parts does not negate that you cannot have a "driving experience" without an engine, just as you cannot have a "Chipotle experience" without seeing the food and the assembly of your entree.

Thus, each of the following facts are uncontroverted:   SSUF 12, 16, 17, 19, 20, 26, 27, 28, 29, 31, 32, 33, 35, 36, 45, 46, 51 and 52.

**D.     Chipotle Does Not Refute that the Food Crew Points to the Food.**

The facts offered by Chipotle do not controvert the factual assertions in SSUF 21, 22, 23. Simply because Ms. Garcia begins by pointing to the menu board does not negate the fact that employees are taught to point to the food items, as testified to by the PMK re: Training and as specifically stated in the training manual.  In fact, Ms. Garcia admits that she also points to food. (Ex. "B" to Herter Decl., 38:14-23.)

Thus, SSUF  21, 22 and 23 are uncontroverted.

**E.     "The Policy" Does Not Establish a Dispute of Fact.**

Chipotle's evidence of its current written policy ("the Policy") does not contradict the facts asserted in SSUF 30, 39, 56, 57, 58, 59, 60, 61, 62, 63, 75, 76, 77, 78, 80 or 81.  The Policy is simply a memorialization of an earlier, unwritten, failed policy. (See Chipotle's SUF No. 33) The Policy does not negate the facts:  the majority of Chipotle customers watch the making of their burritos (SSUF 30);  showing customers food in cups and by spoonfuls is unappetizing and does not allow them to judge the freshness of the food. (SSUF 39, 58).   It does not refute the facts that, during the site inspections, Plaintiff was shown food items only when he asked to see them and was never given the opportunity to see his burrito assembled anywhere, including at the transaction counter. (SSUF 56, 57, 62, 63)  Nor does it refute the fact that it took significantly longer to show him unappetizing ingredients than the time it takes, on average, to serve standing

customers. (SSUF 59) Or that Mr. Antoninetti wants to return to the restaurants, to be able to see the food, to have the "Chipotle experience". (SSUF 60)

Evidence of the Policy does not refute the facts: that Chipotle intends to provide fast service and that it actually tracks the speed of service. (SSUF 75, 76, 77, 78, 79, 80) Or that Chipotle's manager estimates that it will take at least five minutes to serve a person in a wheelchair, in an unappetizing fashion, at an adjacent counter or table. (SSUF 81)  With respect to SSUF 59, the Court can determine for itself whether Plaintiff's description of the video accurately describes the events depicted therein.  Further, the DVD, Ex. "11", establishes that Chipotle did NOT allow customers to move ahead during Mr. Antoninetti's visit, as claimed by Chipotle in response to SSUF 59.

Thus, the following facts are uncontroverted:  SSUF  30, 39, 56, 57, 58, 59, 60, 61, 62, 63, 75, 76, 77, 78, 80 and 81.

**F.    Kim Blackseth's Experience is Uncontroverted.**

Chipotle offers no evidence which controverts the facts set forth in SSUF 64, 65, 66, 67 and 68.  Instead, Chipotle simply argues that it was not important to Mr. Blackseth that he see the food items available or the making of his entree.  Mr. Blackseth's subjective valuation of the "Chipotle experience", or the lack thereof, does not contradict the fact that his "Chipotle experience" was similar to a trip to Jack-in-the-Box, as he acknowledges (SSUF 64); that he was never shown food items or the assembly of his entree, despite the "excellent customer service" policy.  (SSUF 65, 66, 67 and 68) .

Thus SSUF 64, 65, 66, 67 and 68 are uncontroverted.

**G.    Dining and Parking Violations are Uncontroverted.**

Chipotle does not refute that, on March 13, 2006 and continuing until repairs in October of 2006,  the dining tables at its restaurants failed to provide the knee clearance required by the ADAAG. (SSUF 69 and 70)  Chipotle merely argues that the Plaintiff's distilled versions of the facts at SSUF 69 and 70 do not contain dates.  Mr. Blackseth's cited deposition testimony, however, clearly states that the violations were confirmed by him during his site inspections of March 13, 2006. (Ex. 8, 86:19-88:13)  Mr. Shippey's testimony confirms that the seating at both

restaurants was modified because Chipotle itself determined that it did not comply with the ADAAG. This is an admission by Chipotle.

Mr. Blackseth also testified that his "field notes" confirmed that the built-up curb ramps at both restaurants extended into the parking space access aisles. (SSUF 71 and 72) Chipotle does not refute this testimony with any evidence.

Thus, SSUF 69, 70, 71 and 72 are uncontroverted with respect to the existence of the ADAAG violations at least from March of 2006 and continuing until October 5, 2006. There is no evidence that the seating was different at the time of the Plaintiff's first visits. To the contrary, the Plaintiff declares that the seating provided insufficient knee clearance such that he had to sit farther away from the table during his dining experience.

**H.     Chipotle Does Not Controvert That Dining Seating and Parking Modifications Were Made Because of Plaintiff's Lawsuit.**

Chipotle's own PMK re: Design, Scott Shippey, testified at his deposition that the dining seating and parking at both restaurants were modified "as a result of this lawsuit." (SSUF 71, 72, 73, 74) Neither Mr. Shippey nor his counsel objected that these deposition questions were vague and ambiguous. Nor does Chipotle raise a "question of fact" by establishing that repairs were completed before October 5, 2006. Instead, this response simply confirms that the violations *existed* prior to October 5, 2006.

Thus, SSUF 71, 72, 73 and 74 are uncontroverted.

**I.     Chipotle Does Not Controvert That It Tracks Speed of Service and that It Strives to Provide Fast Service.**

Chipotle intends to provide fast service to its customers. It tracks the number of transactions, in part, to track its speed of service. Chipotle understands that its customers want "instant gratification". (SSUF 75, 76, 77, 78, 79, 80). Chipotle attempts to "refute" these facts by stating: that it has no specific standard for service, that speed is not a corporate requirement but merely a goal, and that Chipotle focuses on "one customer at a time." None of the facts offered by Chipotle, however, contradict those contained in Plaintiff's Separate Statement, which are supported by Chipotle's own training manual. Further, the transaction information for the La

Jolla store is relevant to the issue of Chipotle's corporate policy, practice and procedure with respect to providing speedy service to its customers.

Thus, SSUF 75, 76, 77, 78, 79 and 80 are uncontroverted.

**J.   Chipotle Does Not Controvert That the Speed of Service for People in Wheelchairs May Be Five Minutes.**

Chipotle's own manager estimates that speed of service for people in wheelchairs who want to see a burrito built right before their eyes may be five minutes. (SSUF 81) Chipotle offers no evidence to refute this fact, but merely states that Chipotle employees will devote their undivided attention to customers who are taking an extended amount of time to order. This response actually confirms that serving people in wheelchairs will take an "extended amount of time" if they want to see the assembly of their entree. Further, while Chipotle contends that "built right before their eyes" is vague and ambiguous, no such objection was made at Ms. Garcia's deposition when she responded to the relevant question. Moreover, this language is included in Chipotle's own training manual.

Thus, SSUF 81 is uncontroverted.

**K.   Chipotle Does Not Contradict Plaintiff's Testimony that He Experienced Problems because of Seating and Parking Violations.**

Plaintiff clearly states that he had to sit farther away from the dining tables at Chipotle's restaurants because of insufficient knee clearance. (SSUF 82, 83). He also clearly states that he had trouble exiting his car at the Pacific Beach restaurant because the curb ramp extended into the access aisle. (SSUF 83) Chipotle attempts to refute these facts by asserting that Plaintiff does not have personal knowledge of the required knee clearance , the proper dimensions of curb ramps, nor did Plaintiff submit facts "demonstrating what the 'required knee clearance' is and the proper dimensions of curb ramps." Not only do these assertions fail to raise a dispute of fact because they contain no contradicting facts, they are also inaccurate.

In fact, Plaintiff submitted the deposition testimony of Chipotle's own expert which confirms the dining tables at both restaurants did not provide the minimum clear width of 30 inches or the 19 inches of knee clearance. Mr. Blackseth also confirmed that the built-up curb

1  ramps extended into the access aisles of the accessible parking spaces. (SSUF 69-72) ADAAG
2  Section 4.32.2 requires knee clearance of at least 27 inches high, 30 inches wide and 19 inches
3  deep. Section 4.6.3 states that parking spaces and access aisles shall be level, with surface slopes
4  not exceeding 1:50 (2%) in all directions. Mr. Blackseth's testimony, submitted by Plaintiff,
5  confirms that Chipotle's tables did not satisfy the dimensional requirements of Sec. 4.32.2 and
6  that the access aisles did not satisfy the level requirements of Sec. 4.6.3. Chipotle does not refute
7  this specific fact testimony of its own witness.
8      Thus, SSUF 82 and 83 are uncontroverted.

9  **L.**  **Chipotle Does Not Raise an Issue of Fact with Respect to the Construction of the Restaurants.**
10

11      Chipotle "disputes" that its restaurants are constructed in such a way that a 44-inch high
12  wall separates customers from the food preparation area by contending that the word "separates"
13  is vague and ambiguous. (SSUF 40) The photograph submitted by Plaintiff in support of this
14  fact, however, establishes whether or not the wall "separates" the customer from the food prep
15  area.
16      Thus, the photograph submitted in support of SSUF 40 establishes that SSUF 40 is
17  uncontroverted.
18      Chipotle also argues the wall performs a function of hiding outlets and utensils. In fact,
19  the outlets are at a height of 18 to 24 inches from the finished floor, which would be hidden by a
20  wall only 24 inches high. (SSSUF 85). Further, the wall does *not* hide the utensils from standing
21  customers, since they can see the utensils when they look over the wall to see the food
22  ingredients and the making of their entrees. (SSSUF 86).

23  **M.**  **Chipotle's Relevance Objections Should be Overruled.**
24      Chipotle objects to several statements of fact on the basis of "relevance." (SSUF 1-7, 13,
25  14, 24, 25, 38, 47, 77, 78 and 79) SSUF 1 through 7 are relevant because they lay the
26  foundation for the admission of deposition testimony from defense witnesses. SSUF 13 and 14
27  provide information about the assembly process. SSUF 24 and 25 are relevant to the issue of
28  whether the menu board is even sufficiently clear and comprehensive to allow effective ordering.

It should be noted that the menu board makes NO mention that two types of beans are available - perhaps leading to the confusion of the new customer in Ex. 11, the Pacific Beach DVD (10:30 to 12:00), who ordered a "bean" burrito without specifying the type of bean. (SSSUF 87)

SSUF 38 is relevant to the issue of whether the appearance of the food is expected to be taken into account by Chipotle's customers in the evaluation of the items available. Chipotle's objection that the statement of its own witness "calls for speculation" should be overruled. No such objection was made at the time of the deposition. Further, this is an admission regarding the importance of the appearance of Chipotle's food items. The "evidence" offered to "dispute" this stated fact is simply a legal argument.

SSUF 47 is relevant to Chipotle's knowledge (state of mind) that it's walls prevented people in wheelchairs from seeing the food viewing counter. The fact that another customer in a wheelchair did not complaint does not controvert the fact that Chipotle received complaints from customers on this issue.

SSUF 77, 78 and 79 are relevant to the issue that one important benefit provided by Chipotle to standing customers - quick service - is not available to people in wheelchairs if they want to see all of the food ingredients and the making of their entree.

Thus, SSUF 1-7, 13, 14, 24, 25, 38, 47, 77, 78 and 79 are uncontroverted.

**N.    Chipotle's Objections Relating to Vagueness and Ambiguity Should be Overruled.**

Chipotle objects to several statements of fact on the basis that they contain "vague and ambiguous" words or phrases. (SSUF 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 30, 40, 45, 46, 47, 59, 60, 61, 62, 69, 70, 71, 72, 77, 80, 81) Most of the statements, however, are supported by testimony of defense witnesses or by Chipotle's own documents, including the Know, and Chipotle's website: SSUF 16, 17, 18, 19, 20, 21, 22, 23, 26, 30, 40, 45, 46, 47, 69, 70, 71, 72, 77, 80 and 81. Objections to these statements of fact should be overruled.

Objections to the following statements of fact should also be overruled because either the deponents answered the questions without asking for clarification, or no objections to the questions were raised at the time of deposition, or the "ambiguous" words are those chosen by the defense witnesses in their responses: SSUF 16 - 23, 26, 30, 45, 46, 77, and 80.

With respect to the remaining objections, Plaintiff agrees to delete the word "new" with respect to SSUF 21, since the actual deposition testimony was not limited just to new customers. Apparently even returning customers can become "lost" by looking at the Menu board. The Statement, then, is an accurate reflection of deposition testimony of Mr. Cieslak.

Chipotle's objections to SSUF 47, 59, 60, 61 and 62 are not well-taken because the words objected to are terms used by Chipotle on their website ("in front of you") [Ex. "2", Adams DT, Deposition Exhibit No. "23"] or are words with clear meaning ("numerous", "significantly", "annoyed", "other Chipotle customers").

SSUF 40 is addressed in II. L., above. SSUF 69 - 72 are addressed in II. G., above.

SSUF 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 30, 40, 45, 46, 47, 59, 60, 61, 62, 69, 70, 71, 72, 77, 80 and 81 are, therefore, uncontroverted.

**O.   Miscellaneous**

Chipotle also does not directly refute that customers get to customize their burritos. (SSUF 18). Instead, Chipotle simply makes an irrelevant point about the "Schpiel" and argues that the phrase "customize their burritos" is vague and ambiguous. The Schpiel fact offered by Chipotle has no bearing on the ultimate fact at issue. Further, neither Ms. Garcia nor her counsel objected that "customize their burritos" was vague and ambiguous when Ms. Garcia was deposed on this issue. In fact, this phrase is contained in Chipotle's own documents. (Cieslak DT, Ex. 5, Deposition Exhibit 1, pg. 1.1-1)

SSUF 18, then, is uncontroverted.

SSUF 37 is likewise uncontroverted. There may be other factors behind the design of the interiors, but that does not contradict the fact that at least one of the factors is to engage customers more completely into the dining experience. Moreover, the evidence supporting this statement of fact is language taken directly from the Know, Chipotle's own document.

## V.

## CONCLUSION

Based upon the foregoing, there is no genuine issue of material fact exists with respect to Defendant's failure to comply with the ADA and/or California disabled access laws, Mr.

Antoninetti is entitled to summary judgment in his favor on all Claims.

DATED: May 25, 2007                    LAW OFFICES OF AMY B. VANDEVELD

                                        s/ AMY B. VANDEVELD
                                       Attorney for Plaintiff
                                       Email: abvusdc@hotmail.com