1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURIZIO ANTONINETTI<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CHIPOTLE MEXICAN GRILL, INC.,<br>AND DOES 1 THROUGH 10, inclusive,<br><br>　　　　　Defendants. | Civil No. 05CV1660-J (WMc)<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. NO. 94];**<br><br>**(2) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. NO. 87]; AND**<br><br>**(3) DENYING DEFENDANT'S MOTION TO STRIKE [DOC. NO. 128].** |

Before the Court are three motions.  First, Defendant Chipotle Mexican Grill, Inc. ("Defendant") has filed a Motion for Summary Judgment.  [Doc. No. 94.]  Second, Plaintiff Maurizio Antoninetti ("Plaintiff") has filed a Motion for Summary Judgment.  [Doc. No. 87.] Third, Defendant has filed a Motion to Strike portions of Plaintiff's Opposition to Defendant's Motion for Summary Judgment.  [Doc. No. 128.]  The issues presented are decided without oral argument.  *See* S.D. Cal. Civ. R. 7.1.d.1 (2006).  For the reasons stated below, the Court: (1) **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment;

(2) **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment; and (3) **DENIES** Defendant's Motion to Strike.

### Background

At issue in this action is whether two of Defendant's restaurants provide full and equal access to customers in wheelchairs.  Plaintiff is a paraplegic and uses a wheelchair for mobility. (Maurizio Antoninetti Decl. ¶ 2.)  Defendant owns and operates Chipotle Mexican Grill restaurants at 268 N. El Camino Real, Encinitas, California ("Encinitas Restaurant"), and 1504 Garnet Ave., San Diego, California ("San Diego Restaurant").  (Compl. ¶ 4.)  The Encinitas and San Diego Restaurants opened for first occupancy in 2002.  (Def.'s Resp. to Interrogs. No. 7.)

Plaintiff has visited Defendant's restaurants six to eight times.  (Antoninetti Decl. ¶ 24.) During his visits to the restaurants, Plaintiff alleges he encountered architectural barriers denying him full and equal access to the services offered therein.  (*Id.* ¶¶ 24-26.)  Specifically, Plaintiff alleges he encountered barriers to access as a result of the configuration of the seating, parking, and food-preparation counters at the San Diego and Encinitas Restaurants.  (*Id.*)  According to Plaintiff, the curb ramps at both restaurants extended into the disabled parking spaces and their access aisles, making it difficult for him to exit his car.[1]  (*Id.* ¶ 26; Pl.'s Mot. for Summ. J. at 16.) As to the seating at both restaurants, Plaintiff asserts that the dining tables did not have sufficient knee clearance space to accommodate his wheelchair.[2]  (Antoninetti Decl. ¶¶ 25, 26.)  The

---

[1] Defendant objects to the portion of Mr. Antoninetti's Declaration stating that "the curb ramp extends into the parking space and access aisle" on the basis that this statement is an improper legal conclusion.  (Objs. to Antoninetti Decl. at 11.)  However, the Court finds that a layperson could determine from visual observation whether the ramp extended into the parking space and access aisle. Accordingly, Mr. Antoninetti's observation does not constitute an improper legal conclusion.

[2] Defendant objects to the portions of Mr. Antoninetti's Declaration stating that "there was insufficient knee clearance" and "None of the tables at the Pacific Beach restaurant had the required knee clearance" on the basis that these statements are improper legal conclusions.  (Objs. to Antoninetti Decl. at 11.)  Mr. Antoninetti does not state the dimensions of the restaurant tables in his declaration, and the declaration is therefore inadmissible for purposes of determining whether the tables violated the ADA Accessibility Guidelines.  However, the Court finds that a layperson would be able to determine from personal experience whether it is difficult to sit at a particular table while using a wheelchair.  Mr. Antoninetti's Declaration is therefore admissible for the limited purpose of supporting his assertion that he had difficulty sitting at the tables.

05CV1660 J (WMc)

1   parking lots and dining tables at both restaurants were later modified to comply with the

2   Americans with Disabilities Act ("ADA").  (*See* Scott Shippey Dep. 31:5-32:2.[3])

3          The parties' motions for summary judgment and accompanying documents focus on the

4   design of Defendant's food-preparation counters.  Defendant's restaurants serve burritos, tacos,

5   and other Mexican cuisine.  (Matthew Cieslak Dep. Ex. 1 at 1.1-1.[4])  Customers order food

6   verbally by referring to a large menu board hung above the food-preparation counter.  (Kim R.

7   Blackseth Decl. ¶ 18.[5])  The menu board lists the ingredients that customers may add to their

8   entrees.  (*Id.* Ex. T.)  In ordering their entrees, customers move along a service line and select

9   various ingredients from bins.  (Shippey Dep. 19:19-20:18.)  Defendant's employees then

10  prepare the entrees in front of customers using the selected ingredients.  (Cieslak Dep. Ex. 1 at

11  1.1-1.)  As stated in Defendant's employee manual, "Customers can step up to our serving line

12  and see, select and direct exactly what will go into their burritos."  (*Id.* Ex. 1 at 1.1-2.)

13         Defendant's employees prepare the entrees on counters that are approximately 35 inches

14  high and 12 feet long.  (Steven Schraibman Decl. ¶ 9.[6])  A wall separates restaurant customers

15  from the food-preparation counters.  (*Id.*)  The wall serves to conceal restaurant equipment from

16  customers and to delineate the food-preparation area from the area in which customers pay for

17  their entrees.  (Shippey Dep. 47:2-15, 53:3-54:4.)  The wall is 44 inches from the floor and is

18  approximately 4.25 inches wide.  (Schraibman Decl. ¶ 9.)  A sneeze guard is attached to the top

19  of the wall by a metal bracket that is approximately 2 inches high.  (*Id.*)  To watch their food

20  being prepared by Defendant's employees, customers must look over the top of the wall and the

21  attached metal bracket, which, together, are approximately 46 inches from the floor.  (*Id.* at 10.)

22

23 ─────────────

24         [3] Scott Shippey is the director of design for Defendant and is responsible for maintenance,
    repairs, and improvements to the San Diego and Encinitas Restaurants.  (Shippey Decl. ¶ 1.)

25         [4] Matthew Cieslak has worked as a manager at Defendant's restaurants for several years.
26  (Cieslak Dep. 8:23-9:24.)

27         [5] Kim R. Blackseth is a consultant on disabled access issues whom Defendant has retained as an
    expert. (Blackseth Decl. ¶ 1.)

28         [6] Steven Schraibman is a licensed architect and general contractor whom Plaintiff has retained as
    an expert.  (Schraibman Decl. ¶ 2.)

05CV1660 J (WMc)

1    After customers order their entrees and the employees prepare them, they immediately

2    move down the service line to a transaction station to pay for and pick up their entrees.  (Shippey

3    Dep. 20:16-19.)  The transaction stations adjoin the food-preparation counters and consist of

4    cash registers mounted on counters that are 34 inches high.  (*See id.* Ex. 25; Blackseth Decl. Ex.

5    S7.)  Unlike the food-preparation counters, there is no 44-inch-high wall between customers and

6    the transaction stations.  (*See* Shippey Dep. Ex. 25; Blackseth Decl. Ex. S6.)

7    Plaintiff asserts that when he first visited the Encinitas Restaurant in February 2005, he

8    could not see the ingredients the restaurant offered due to the height of the wall in front of the

9    food-preparation counter.  (Antoninetti Decl. ¶¶ 12-13.)  Plaintiff states that, unlike standing

10   customers, he could not see his burrito being prepared.  (*Id.*)  Plaintiff alleges that Defendant's

11   employees did not show him any of the ingredients, nor did they describe the ingredients to him.

12   (*Id.*)  Plaintiff states that he ordered his burrito off the menu board but was unable to select from

13   the various ingredients that were available because he did not know what they were, and he

14   could not see them arranged on the food-preparation counter.  (*Id.*)

15   On October 6, 2006, the parties conducted site inspections of the San Diego and Encinitas

16   Restaurants as part of discovery.  (*Id.* ¶ 16.)  During the inspections, Defendant's employees

17   lifted some of the ingredients above the wall using tongs so that Plaintiff could see them.  (*Id.*)

18   Defendant's employees also showed Plaintiff samples of the ingredients in small plastic cups.

19   (*Id.*)  Plaintiff states that the employees did not show him the ingredients unless he asked to see

20   them, and that he was not given an opportunity to select how much of a particular ingredient he

21   wanted in his burrito.  (*Id.* ¶¶ 17-23.)  Plaintiff also states that he was unable to see his burrito

22   being assembled.  (*Id.* ¶ 23.)  Plaintiff states that he "felt extremely uncomfortable" during the

23   site inspections because he was disrupting the flow of the food-ordering line while the employ-

24   ees showed him the ingredient samples.[7]  (*Id.* ¶ 20.)

25

26   [7] Defendant objects to the statement in Mr. Antoninetti's Declaration that he "felt extremely
     uncomfortable because I was acutely aware that I was disrupting the flow of the line" on the basis that
27   the statement calls for speculation.  (Objs. to Antoninetti Decl. at 8.)  However, Defendant does not
     explain why Mr. Antoninetti's statement would call for speculation.  Mr. Antoninetti would be able to
28   determine from personal observation whether he was disrupting the flow of the line.  Further, his
     statement has some basis in fact given other evidence suggesting that it takes Defendant's employees

On February 23, 2007, Defendant implemented a nationwide "Customers With Disabilities" policy.  (Ron Sedillo Decl. ¶ 3.[8])  The policy provides that "[a] customer with a disability (for example, a visual or mobility impairment) may benefit from some alternative means of presenting or describing our food."  (*Id.* ¶ 4.)  The policy sets forth several examples of the ways in which Defendant's employees can accommodate individuals with disabilities, such as showing customers samples of food in cups, giving customers an opportunity to see or sample the food at a table, or describing the food or food-preparation process to customers.  (*Id.*)  The policy notes that considerations of productivity or efficiency "are secondary to ensuring a positive experience for disabled customers."  (*Id.*)

Plaintiff filed a Complaint on August 22, 2005, alleging various causes of action, including violations of the ADA, the California Unruh Civil Rights Act ("Unruh Act"), and the California Disabled Persons Act ("DPA").  [Doc. No. 1.]  On April 16, 2007, Defendant filed a motion for summary judgment, contending: (1) Plaintiff's claims for injunctive relief under the ADA are moot because Defendant has remedied the alleged architectural barriers; (2) Defendant's food-preparation area and transaction station fully comply with accessibility regulations; and (3) the Court should decline jurisdiction over Plaintiff's state law claims.  [*See* Doc. No. 94.]  On April 12, 2007, Plaintiff filed a motion for summary judgment, arguing that (1) the design of Defendant's restaurants violates the ADA Accessibility Guidelines; and (2) the benefits, advantages, and privileges of Defendant's restaurants are not available to persons in wheelchairs.  [*See* Doc. No. 87.]

### *Legal Standards*

## I.  Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure on "all or any part" of a claim where there is an absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *see also Celotex*

---

longer than usual to serve customers if they are shown samples of the ingredients.  (*See* Josefina Garcia Dep. 62:6-14.)

[8] Ron Sedillo is the director of training and development for Defendant.  (Sedillo Decl. ¶ 1.)

1  *Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing

2  substantive law, the fact might affect the outcome of the case.  *See Anderson v. Liberty Lobby,*

3  *Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if  "the evidence is

4  such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  When

5  making its determination, the Court must view all inferences drawn from the underlying facts in

6  the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co.  v.*

7  *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

8       The party seeking summary judgment bears the initial burden of establishing the absence

9  of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  If the moving party does not

10  bear the burden of proof at trial, it need not produce evidence to negate the non-moving party's

11  claim, but rather can satisfy the initial burden by demonstrating that the non-moving party failed

12  to establish an essential element of that party's case.  *See id.* at 322-23.

13       If the moving party meets the initial burden, the nonmoving party must set forth specific

14  facts showing there is a genuine issue for trial.  *Anderson*, 477 U.S. at 250.  It is insufficient for

15  the party opposing summary judgment to "rest upon the mere allegations or denials of [his or

16  her] pleading."  Fed. R. Civ. P. 56(e).  Rather, the party opposing summary judgment must "by

17  [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

18  file,' designate 'specific facts showing that there is a genuine issue for trial.' "  *Celotex*, 477 U.S.

19  at 324 (quoting Fed. R. Civ. P. 56).  The Court is not obligated "to scour the record in search of a

20  genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing

21  *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)).  "[T]he district court may

22  limit its review to the documents submitted for the purposes of summary judgment and those

23  parts of the record specifically referenced therein."  *Carmen v. San Francisco Unified Sch. Dist.*,

24  237 F.3d 1026, 1030 (9th Cir. 2001).

25  **II. Americans with Disabilities Act**

26       Title III of the ADA prohibits discrimination "on the basis of disability in the full and

27  equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of

28  any place of public accommodation."  42 U.S.C. § 12182(a). The ADA definition of "public

accommodation" includes restaurants such as Chipotle Mexican Grill. *See* 42 U.S.C. §

12181(7)(B) ("Public accommodation [includes] a restaurant, bar, or other establishment serving

food or drink . . . ."). Title III requires that facilities constructed for first occupancy on or after

January 26, 1993, be "readily accessible to and usable by individuals with disabilities, except

where an entity can demonstrate that it is structurally impracticable." *See* 42 U.S.C. §

12183(a)(1); *see also* 28 C.F.R. § 36.401(a)(1).

Title III gives the Department of Justice authority to develop regulations implementing

the requirements of the ADA. *See* 42 U.S.C. § 12186(b). The ADA Accessibility Guidelines

("ADAAG") are codified at 28 C.F.R. Part 36, Appendix A. Failure of newly constructed

buildings to abide by the construction guidelines set forth in the ADAAG violates the ADA. *See*

42 U.S.C. § 12183(a)(1). As newly constructed public accommodations, Defendant's San Diego

and Encinitas Restaurants must comply with the specific accessibility requirements set forth in

the ADAAG. *See* 28 C.F.R. §§ 36.401, 36.406. The final part of the ADA's multi-tiered legal

and regulatory scheme is the Technical Assistance Manual ("TAM"), published by the Depart-

ment of Justice and providing guidance on the applicability of the ADAAG to Title III facilities.

### *Discussion*

### I. Defendant's Motion for Summary Judgment

Defendant's motion for summary judgment addresses two basic areas of ADA noncom-

pliance alleged by Plaintiff. First, Defendant argues that there is no genuine issue of material

fact as to whether its food-preparation counters comply with the ADA. (*See* Def.'s Mot. for

Summ. J. at 9-10.) Second, Defendant argues that Plaintiff's claims regarding technical

violations of the ADAAG are moot because its restaurants either already complied with the

ADA, or Defendant modified them to comply with the ADA. (*Id.* at 6.)

### A. Defendant's Food-Preparation Counters

Defendant asserts that summary judgment against Plaintiff is appropriate because there is

no genuine issue of material fact that its food-preparation counters comply with the ADA.

(Def.'s Mot. for Summ. J. at 9.) Defendant asserts that its food-preparation counters are

properly characterized as sales or service counters, and the dimensions of the food-preparation

counters comply with the ADAAG's requirements for sales and service counters.  (*Id.* at 10.)
Defendant further argues that it has a policy in place to reasonably accommodate customers with
disabilities.  (*Id.* at 12.)  Finally, Defendant argues that Plaintiff cannot rely on the ADA's
general anti-discrimination provisions because challenges to a public accommodation's
structural design are controlled by the more specific requirements of the ADAAG.  (*Id.* at 16.)
In opposition, Plaintiff argues that ADAAG § 4.33.3 requires that Defendant provide disabled
and non-disabled customers with comparable lines of sight to its food-preparation counters.
(Opp'n to Def.'s Mot. for Summ. J. at 8.)  In the alternative, Plaintiff argues that if the Court
finds that ADAAG § 4.33.3 does not apply to Defendant's food-preparation counters, the Court
should find that the ADA's general anti-discrimination provisions require Defendant to modify
the food-preparation counters.  (*Id.* at 12.)

The Court first examines which ADAAG provisions regulate the food-preparation
counters.  Plaintiff asserts that ADAAG § 4.33.3, which governs placement of wheelchair
locations in assembly areas, applies to the food-preparation counters.  (Opp'n to Def.'s Mot. for
Summ. J. at 6.)  Defendant argues that ADAAG § 4.33.3 applies only to venues such as theaters,
and the regulation therefore cannot govern the food-preparation counters at Defendant's
restaurants.  (Def.'s Mot. for Summ. J. at 11-12.)  Defendant asserts that ADAAG § 7.2, which
governs sales and service counters, applies to the food-preparation counters.  (*Id.* at 10.)

### 1. ADAAG § 4.33.3

The parties dispute whether ADAAG § 4.33.3, which governs placement of wheelchair
locations in assembly areas, applies to Defendant's food-service counters.  The Court first
examines the text of ADAAG § 4.33.3 to determine whether it can plausibly be read to encom-
pass Defendant's food-preparation counters.  The text of ADAAG § 4.33.3 provides as follows:

> Placement of Wheelchair Locations.  Wheelchair areas shall be an integral part of any
> fixed seating plan and shall be provided so as to provide people with physical
> disabilities a choice of admission prices and lines of sight comparable to those for
> members of the general public.  They shall adjoin an accessible route that also serves
> as a means of egress in case of emergency.  At least one companion fixed seat shall
> be provided next to each wheelchair seating area.  When the seating capacity exceeds

300, wheelchair spaces shall be provided in more than one location.   Readily removable seats may be installed in wheelchair spaces when the spaces are not required to accommodate wheelchair users.

ADAAG § 4.33.3.  The plain language of ADAAG § 4.33.3 does not lend itself to application to Defendant's food-preparation counters.  ADAAG § 4.33.3 states that "[w]heelchair areas shall be an integral part of any *fixed seating* plan and shall be provided so as to provide people with physical disabilities a choice of . . . lines of sight."  ADAAG § 4.33.3 (emphasis added).  Defendant's food service counters are not part of a "fixed seating" plan.  Defendant's customers do not place their orders while seated and instead proceed through a line in order to select ingredients for their entrees.  (*See* Shippey Dep.19:19-20:18.)  Defendant's employees prepare the entrees as customers move through the line.  (*See* Cieslak Dep. Ex. 1 at 1.1-1)  ADAAG § 4.33.3 repeatedly refers to "seats" and "seating," indicating that the regulation was not intended to apply to food-service lines.  *See* ADAAG § 4.33.3.  Indeed, the Department of Justice's ADA Title III Technical Assistance Manual ("TAM"), a publication issued to assist individuals in understanding their rights under the ADA, states that public accommodations "must locate *seating* for individuals who use wheelchairs so that it . . . [provides] lines of sight and choices of admission prices comparable to those offered to the general public."  *See* Title III TAM § 4.4600 (emphasis added).  This section of the TAM indicates that ADAAG § 4.33.3's line-of-sight requirement was intended to apply to fixed seating.  Further, virtually all of the case law addressing ADAAG § 4.33.3 examines the accessibility of fixed seating areas in venues such as theaters, arenas, and stadiums.  *See, e.g. United States v. Hoyts Cinemas Corp.*, 380 F.3d 558, 562 (1st Cir. 2004) (applying ADAAG § 4.33.3 to fixed seating at movie theater); *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 576 (6th Cir. 2003) (same); *Oregon Paralyzed Veterans of America v. Regal Cinemas, Inc.*, 339 F.3d 1126, 1133 (9th Cir. 2003) (same); *Lara v. Cinemark USA, Inc.*, 207 F.3d 783, 786 (5th Cir. 2000) (same); *Caruso v. Blockbuster-Sony Music Entm't Ctr.*, 193 F.3d 730, 732 (3d Cir. 1999) (applying ADAAG § 4.33.3 to fixed seating at pavilion); *Miller v. Cal. Speedway Corp.*, 453 F. Supp. 2d 1193, 1196 (C.D. Cal. 2006) (applying ADAAG § 4.33.3 to fixed seating at track and stadium complex); *United States v. AMC Entm't, Inc.*, 232

1    F. Supp. 2d 1092, 1094 (C.D. Cal. 2002) (applying ADAAG § 4.33.3 to fixed seating at movie

2    theater).  Because there is no indication that ADAAG § 4.33.3's line-of-sight requirement

3    governs areas without fixed seating, the Court **FINDS** that this regulation does not apply to

4    Defendant's food-preparation counters.

5               **2. ADAAG § 7.2**

6          As noted above, Defendant's food-preparation counters adjoin transaction stations, which

7    consist of cash registers mounted on 34-inch-high counters.  (*See* Shippey Dep. Ex. 25;

8    Blackseth Decl. Ex. S7.)  The parties dispute whether the food-preparation counters constitute

9    "Sales and Service Counters" as described in ADAAG § 7.2.  Defendant argues that its food-

10   preparation area, combined with the adjoining transaction area where customers pay for their

11   entrees at cash registers, constitutes a sales or service counter.  (*See* Def.'s Mot. for Summ. J. at

12   9-10.)  Defendant further argues that because the 34-inch-high transaction counters satisfy

13   ADAAG § 7.2's requirement that a portion of a sales or service counter be 36 inches high or

14   less, the entire food-preparation area complies with ADAAG § 7.2.  In opposition, Plaintiff

15   argues that because no goods or services are exchanged at Defendant's food-preparation

16   counters, these counters cannot be considered sales or service counters, and ADAAG § 7.2 does

17   not apply.  (Opp'n to Def.'s Mot. for Summ. J. at 20-21.)  Plaintiff asserts that the cashier

18   counter alone can be considered a sales or service counter because it is the only place in

19   Defendant's restaurants where money is exchanged.  (*Id.* at 21.)

20         Section 7.2 of the ADAAG is titled "Sales and Service Counters, Teller Windows,

21   Information Counters."  ADAAG § 7.2   ADAAG § 7.2(1) applies to counters that have cash

22   registers, and provides in pertinent part:

23         In areas used for transactions where counters have cash registers and are provided for
           sales or distribution of goods or services to the public, at least one of each type shall
24         have a portion of the counter which is at least 36 in (915mm) in length with a
           maximum height of 36 in (915 mm) above the finish floor. . . . Such counters shall
25         include, but are not limited to, counters in retail stores, and distribution centers.

26   ADAAG § 7.2(1).  ADAAG § 7.2(2) applies to counters that do not have cash registers, and

27   provides in pertinent part:

28         In areas used for transactions that may not have a cash register but at which goods or
           services are sold or distributed, including, but not limited to, ticketing counters, teller

                                        10

stations, registration counters in transient lodging facilities, information counters, box office counters and library check-out areas, either:

(i) a portion of the main counter which is a minimum of 36 in (915 mm) in length shall be provided with a maximum height of 36 in (915 mm); or

(ii) an auxiliary counter with a maximum height of 36 in (915 mm) in close proximity to the main counter shall be provided; or

(iii) equivalent facilitation shall be provided (e.g., at a hotel registration counter, equivalent facilitation might consist of: (1) provision of a folding shelf attached to the main counter on which an individual with a disability can write, and (2) use of the space on the side of the counter or at the concierge desk, for handing materials back and forth).

ADAAG § 7.2(2).

Sales and service counters in retail establishments and restaurants must comply with the requirements of ADAAG § 7.2. *See Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1166 (S.D. Cal. 2006) (holding that counter at which ice cream cones were sold violated ADAAG § 7.2 because it did not have section of counter that was at least 36 inches in length with a maximum height of 36 inches); *Parr v. Waianae L & L, Inc.*, 2000 WL 687655, at *21 (D. Hawaii May 16, 2000) (holding that counter at which fast food was sold violated ADAAG § 7.2 because it did not have section of counter that was at least 36 inches in length with a maximum height of 36 inches); *Independent Living Res. v. Or. Arena Corp.*, 1 F. Supp. 2d 1124, 1137 (D. Or. 1998) (holding that counter at which concessions were sold violated ADAAG § 7.2 because it did not have section of counter that was at least 36 inches in length).  Thus, sales and service counters in retail establishments and restaurants must have a section of counter that is at least 36 inches in length with a maximum height of 36 inches, or an auxiliary counter in close proximity to the main counter, or equivalent facilitation.  *See* ADAAG § 7.2; *Hubbard*, 433 F. Supp. 2d at 1166; *Independent Living Res.*, 1 F. Supp. 2d at 1137.

The Court first examines whether ADAAG § 7.2(1) or ADAAG § 7.2(2) applies to Defendant's food-preparation counters.  ADAAG § 7.2(1) applies to "areas used for transactions where counters have cash registers."  ADAAG § 7.2(1).  Although the transaction counters that adjoin the food-preparation counters have cash registers, the food-preparation counters them-

selves do not have cash registers.  The Court thus **FINDS** that ADAAG § 7.2(1), on its face, does not apply to Defendant's food-preparation counters.  ADAAG § 7.2(2), in contrast, applies to "areas used for transactions that may not have a cash register."  ADAAG § 7.2(2).  The Court has not located any case law directly addressing the applicability of ADAAG § 7.2(2) to establishments that have food-preparation areas similar to those at Defendant's restaurants, i.e., a single food-preparation counter that adjoins a transaction counter with a cash register.  The Court thus looks to the plain language of ADAAG § 7.2(2) to determine whether this regulation governs Defendant's food-preparation counters.  *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 732 (9th Cir. 2007) ("Statutory interpretation begins with the plain meaning of the statute's language.").  If the language of ADAAG § 7.2(2) is clear and consistent with the ADAAG's overall scheme, "the plain language of the statute is conclusive and the judicial inquiry is at an end."  *See id.*

As previously noted, ADAAG § 7.2(2) applies to "areas used for transactions."  *See* ADAAG § 7.2(2).  The Court must first determine whether the food-preparation counters constitute "areas used for transactions."  Plaintiff argues that the food-preparation counters do not constitute areas used for transactions because no money is exchanged at the food-preparation counters.  The ADAAG does not define "transaction."  *Black's Law Dictionary* provides several definitions of the word, including "The act or an instance of conducting business or other dealings"; "Something performed or carried out; a business agreement or exchange"; and "Any activity involving two or more persons."  *Black's Law Dictionary* 1503 (7th ed. 1999).  Under any one of these three definitions, the activities carried out at Defendant's food-preparation counters constitute transactions.  A customer's placing of an order constitutes "conducting business."  An employee's preparation of a customer's entree constitutes "[s]omething performed or carried out" as well as an "activity involving two or more persons."  The Court thus **FINDS** that Defendant's food-preparation counters constitute "areas used for transactions."

Plaintiff also challenges the applicability of ADAAG § 7.2 to Defendant's food-preparation counters on the grounds that no goods or services are exchanged at the food-preparation counters.  (Opp'n to Def.'s Mot. to Dismiss at 20.)  Plaintiff asserts that no goods or services are

1  exchanged at the food-preparation counters because customers receive their entrees at the

2  transaction stations after paying for them.  (*See id.*)

3       ADAAG § 7.2(2) applies to "areas used for transactions *at which goods or services are*

4  *sold or distributed*."  ADAAG § 7.2(2) (emphasis added).  The ADAAG does not define goods or

5  services.  *Black's Law Dictionary* defines "service" as "[a]n intangible commodity in the form of

6  human effort, such as labor, skill, or advice."  *Black's Law Dictionary* 1372 (7th ed. 1999).  The

7  acts performed by Defendant's employees at the food-preparation counter, including taking

8  customers' orders and preparing their entrees, readily fall within this definition of "service."

9  The "labor" and "skill" Defendant's employees exert in taking customers' orders and preparing

10  their entrees constitutes "an intangible commodity in the form of human effort."  *See id.*  There

11  is no indication that ADAAG § 7.2(2) applies only to counters at which tangible goods or

12  commodities are exchanged.  In fact, the regulation cites as examples several areas in which

13  intangible commodities are exchanged, such as registration and information counters.  *See*

14  ADAAG § 7.2(2).  Accordingly, the Court concludes that the efforts of Defendant's employees

15  in taking customers' orders and preparing their entrees constitute "services."  In sum, because

16  the food-preparation counters are "areas used for transactions that may not have a cash register

17  but at which goods or services are sold or distributed," the Court **FINDS** that ADAAG § 7.2(2)

18  governs Defendant's food-preparation counters.

19       The Court next examines whether Defendant's food-service counters comply with the

20  requirements of ADAAG § 7.2(2).  The regulation provides three options for compliance.  First,

21  a public accommodation with a sales or service counter can satisfy the regulation by providing

22  "a portion of the main counter" which is a minimum of 36 inches long and a maximum of 36

23  inches high.  *See* ADAAG § 7.2(2)(i).  Second, a public accommodation can provide an

24  "auxiliary counter" in close proximity to the "main counter" that is a maximum of 36 inches

25  high.  *See* ADAAG § 7.2(2)(ii).  Third, a public accommodation can provide "equivalent

26  facilitation."  *See* ADAAG § 7.2(2)(iii).  The Court analyzes the design of Defendant's food-

27  preparation counters to determine whether they meet any of the three options for compliance.

28

### a. ADAAG § 7.2(2)(i)

The first option for compliance is for Defendant to provide "a portion of the main counter" that is a minimum of 36 inches long and a maximum of 36 inches high.  *See* ADAAG § 7.2(2)(i).  The Court initially notes that the dimensions of food-preparation counter, standing alone, exceed the maximum height requirement of ADAAG 7.2(2)(i).  As previously noted, a 44-inch-high wall is attached to the food-preparation counter and separates restaurant customers from the food-preparation area.  (*See* Schraibman Decl. ¶ 9.)  The wall serves to conceal restaurant equipment from customers and to delineate the food-preparation area from the transaction counters where customers pay for their entrees.  (*See* Shippey Dep. 47:2-15, 53:3-54:4.)  Because the wall attached to the food-preparation counter is 44 inches high, it exceeds ADAAG 7.2(2)(i)'s maximum height requirement of 36 inches.  *See* ADAAG 7.2(2)(i).  However, the food-preparation counter can still comply with ADAAG 7.2(2)(i) if a portion of the counter is less than 36 inches high.  *See* ADAAG 7.2(2)(i).

Defendant argues that the 34-inch-high transaction counters on which its cash registers are mounted satisfy the requirement that it provide "a portion of" the food-preparation counter that is no more than 36 inches high.  (*See* Def.'s Mot. for Summ. J. at 11.)  The Court notes that the transaction counters, unlike the food-preparation counters, are not obstructed by a 44-inch-high wall.  Further, at 34 inches high, the transaction counters do not exceed the ADAAG's maximum height requirement of 36 inches.  (*See* Shippey Dep. Ex. 25; Blackseth Decl. Ex. S7.) However, the Court declines to characterize the transaction counter as "a portion of" the food-preparation counter where customers select the ingredients for their entrees and have them assembled.  *See* ADAAG § 7.2(2)(i).  The food-preparation counter and the transaction counter serve different functions.  Customers select ingredients for their entrees and watch them being prepared at the food-preparation counter, and they pay for their entrees and pick them up at the transaction counter.  (*See* Shippey Dep. 19:19-20:19.)  Customers cannot select the ingredients for their entrees or watch them being prepared at the transaction counter, and, vice versa, they cannot pay for their entrees at the food-preparation counter. (*See id.* 20:20-21:8.)  In other words, the services obtained at the food-preparation counter are not offered at the transaction

14

counter.  Customers in wheelchairs therefore cannot receive full and equal access to Defendant's restaurants by utilizing the transaction counter alone.  ADAAG § 7.2(2)(i) does not state, on its face, that a public accommodation is required to provide full and equal access to its services at both a main counter and the wheelchair-accessible portion of the counter.  However, it would be absurd for the Court to conclude that the requirements of ADAAG § 7.2(2)(i) are satisfied where a public accommodation provides a wheelchair-accessible counter, but does not provide all of its essential services at this counter.  Well-accepted rules of statutory construction provide that "statutory interpretations which would produce absurd results are to be avoided."  *Ariz. State Bd. for Charter Schs. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006) (citing *Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004)).  An interpretation of ADAAG § 7.2(2)(i) permitting Defendant to provide wheelchair-accessible counters for only part of its essential services would lead to absurd results.  For example, if the transaction counters had 52-inch-high walls constructed in front of them, and were adjoined by 34-inch-high food-preparation counters, the food-preparation counters would arguably constitute a "portion of" the transaction counters.  However, it would be difficult for some customers in wheelchairs to reach over the 52-inch-high wall in front of the transaction counter to pay for their meals and receive their entrees.  *See* ADAAG § 4.2.5 (stating that if the floor space in a public accommodation only allows a forward approach to an object, the maximum high forward reach allowed is 48 inches); Blackseth Decl. Exs. Q2, Q3 (stating that the "typical eye height" of an adult wheelchair user is 43-51 inches high).

In the instant case, the Court has already noted that the dimensions of the food-preparation counters, standing alone, fail to satisfy ADAAG § 7.2(2) due to the 44-inch-high wall constructed in front of the food-preparation counters.  Defendant asserts that the food-preparation counters still comply with the ADA because they adjoin 34-inch-high transaction counters, which do not exceed ADAAG § 7.2(2)'s maximum height requirement.  (*See* Def.'s Mot. for Summ. J. at 11.)  However, the fact remains that the services offered at the food-preparation counters, namely, ordering entrees and selecting ingredients, are not offered at the transaction counters.  Customers in wheelchairs therefore cannot obtain full and equal access to Defendant's

05CV1660 J (WMc)

1  restaurants by using the transaction counters alone.  As a result, the Court **FINDS** that Defen-

2  dant's transaction counters cannot constitute a "portion of" the food-preparation counters for

3  purposes of ADAAG § 7.2(2)(i).

4  **b. ADAAG § 7.2(2)(ii)**

5  The second option for compliance is for Defendant to provide "an auxiliary counter with

6  a maximum height of 36 in (915 mm) in close proximity to the main counter."  ADAAG §

7  7.2(2)(ii).  The Court notes that the transaction counters adjoin the food-preparation counters,

8  and therefore are in "close proximity" to the food-preparation counters.  However, as already

9  noted in Section I.A.2.a of this Order, the transaction counters alone do not provide customers in

10  wheelchairs with full and equal access to Defendant's restaurants.  For the reasons stated in

11  Section I.A.2.a of this Order, the Court **FINDS** that because the essential services obtained at the

12  food-preparation counters are not offered at the transaction counters, Defendant's transaction

13  counters do not constitute "auxiliary counters" for purposes of ADAAG 7.2(2)(ii).

14  **c. ADAAG § 7.2(2)(iii)**

15  The third option for compliance is for Defendant to provide "equivalent facilitation."

16  *See* ADAAG 7.2(2)(iii).  The ADAAG authorizes "the use of other designs and technologies . . .

17  where the alternative designs and technologies used will provide substantially equivalent or

18  greater access to and usability of the facility."  *See* ADAAG § 2.2.  The equivalent facilitation

19  provision acknowledges "that the federal government does not enjoy a monopoly on good ideas,

20  and that there may be more than one means to accomplish a particular objective."  *Independent*

21  *Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 727 (D. Or. 1997).

22  Defendants assert that their Customers With Disabilities Policy ("Policy") accommodates

23  customers with disabilities and provides them with "a dining experience comparable to that of

24  able-bodied customers."  (Def.'s Mot. for Summ. J. at 15.)  The Policy provides that restaurant

25  staff "will offer a suitable accommodation based on the individual circumstances" of an

26  individual with a disability.  (Sedillo Decl. ¶ 4.)  The Policy provides several examples of

27  accommodations, such as placing samples of food in cups to be handed or shown to the

28  customer; permitting customers to see or sample food at a table; or describing the food or food-

preparation process to the customer.  (*Id.*)  The Policy further states that considerations of

productivity or efficiency "are secondary to ensuring a positive experience for disabled custom-

ers."  (*Id.*)  In opposition, Plaintiff argues that the Policy fails to provide full and equal access to

the goods and services offered at Defendant's restaurants.  (Opp'n to Def.'s Mot. for Summ. J. at

22.)  Plaintiff asserts that placing food in sample cups or showing customers spoonfuls of food

does not provide customers in wheelchairs the same opportunity as standing customers to see the

full array of ingredients offered by Defendant's restaurants.  (*See* Antoninetti Decl. ¶¶ 19, 21.)

Plaintiff also alleges that sample cups cannot enable customers in wheelchairs to determine the

freshness or quality of food.  (*See* Josefina Garcia[9] Dep. 72:8-23.)   Plaintiff also asserts that

placing the ingredients at an adjacent table or spooning them into sample cups deprives

individuals in wheelchairs the fast service that is customarily provided to standing customers at

Defendant's restaurants.  (*See id.* 62:6-14; Antoninetti Decl. ¶ 20).

 To prevail on its motion for summary judgment, Defendant must show that there is no

genuine issue of material fact as to whether its Policy provides equivalent facilitation.  Specifi-

cally, Defendant must demonstrate that there is no genuine issue of material fact that the Policy

"provide[s] substantially equivalent or greater access to and usability of the facility."  *See*

ADAAG § 2.2.  A reasonable jury might accept Defendant's statements that handing sample

cups to customers or displaying ingredients on an adjacent table provides equivalent access to

Defendant's restaurants.  A jury might find, for example, that because customers in wheelchairs

are still able to place orders and purchase entrees regardless of the wall in front of the food-

preparation counter, Defendant's Policy provides equivalent facilitation.  On the other hand, a

reasonable jury might accept Plaintiff's statements that placing samples in cups or displaying

them on an adjacent table does not provide equivalent access.  A jury might find that the food

samples do not enable customers in wheelchairs to judge the freshness of the food or receive fast

service to the same degree as standing customers.  The Court thus **FINDS** that this fact-intensive

---

 [9] Josefina Garcia began working for Defendant in July 2004 and worked as a general manager at
Defendant's Encinitas Restaurant.  (Garcia Dep. 8:15-24, 9:19-23, 11:13-17.)

1  issue presents material questions of fact and renders summary judgment on the question of

2  equivalent facilitation inappropriate.

3  **3. The ADA's General Anti-Discrimination Provisions**

4          The parties dispute whether the ADA's general anti-discrimination provisions should

5  apply to Defendant's food-preparation counters.  Defendant argues that Plaintiff cannot rely on

6  the general anti-discrimination provisions because the ADAAG specifically addresses the design

7  standards for counters in public accommodations.  (*See* Mot. for Summ. J. at 17.)  In opposition,

8  Plaintiff argues that because there is no specific ADAAG provision addressing Defendant's

9  counters, the general anti-discrimination provisions should control.  (*See* Opp'n to Def.'s Mot.

10  for Summ. J. at 12.)

11          A general regulatory or statutory provision typically cannot be used to trump a specific

12  provision.  *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524-26 (1989); *Crawford*

13  *Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987).  "Where there is no clear

14  intention otherwise, a specific statute will not be controlled or nullified by a general one,

15  regardless of the priority of enactment."  *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153

16  (1976) (quoting *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974)).  In the ADA context, courts

17  have held that where there is a specific regulation that governs a particular design issue, that

18  specific provision is determinative as to whether there is a violation of the more general

19  regulatory and statutory provisions.  *See United States v. Nat'l Amusements, Inc.*, 180 F. Supp.

20  2d 251, 258 (D. Mass. 2001); *Independent Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 746

21  (D. Or. 1997).

22          As discussed in Section I.A.2 of this Order, Defendant's food-preparation counters

23  constitute "areas used for transactions that may not have a cash register but at which goods or

24  services are sold or distributed."  *See* ADAAG § 7.2(2).  This Court therefore found that the

25  food-preparation counters are governed by the design standards of ADAAG § 7.2(2).  Because

26  there is a specific design provision governing Defendant's food-preparation counters, that

27  provision controls over the ADA's general anti-discrimination provisions.  *See Green*, 490 U.S.

28

18

at 524-26.  The Court therefore declines to apply the ADA's general anti-discrimination provisions to Defendant's food-preparation counters.

### 4. California Building Code

The parties dispute whether the issuance of certificates of occupancy to Defendant's San Diego and Encinitas Restaurants constitutes prima facie evidence that the restaurants complied with all applicable accessibility regulations.  (*See* Def.'s Mot. for Summ. J. at 19-22; Opp'n to Def.'s Mot. for Summ. J. at 24.)  Compliance with a state building code creates a rebuttable presumption of compliance with the ADA.  *See United States v. AMC Entm't, Inc.*, 245 F. Supp. 2d 1094, 1101 (C.D. Cal. 2003).  This Court concludes that because Plaintiff has demonstrated that there is a genuine issue of material fact as to whether the food-preparation counters comply with the ADA, Plaintiff has sufficiently rebutted this presumption.  Accordingly, the Court **FINDS** that the issuance of the certificates of occupancy, standing alone, does not constitute sufficient evidence for granting Defendant's Motion for Summary Judgment.

### 5. California Health and Safety Code

Defendant asserts that summary judgment is appropriate because the height of the wall constructed in front of the food-preparation counter is required by law to ensure sanitary conditions for Defendant's customers.  (Def.'s Mot. for Summ. J. at 23.)  Defendant cites California Health and Safety Code § 114080, which provides that unpackaged food must be displayed "in clean, sanitary, and covered or otherwise protected containers."  *See* Cal. Health & Safety Code § 114080.  However, Defendant has failed to allege facts demonstrating that the wall constructed in front of the food-preparation counter is the only mechanism available for complying with the state health code.  Defendant has provided no declarations or deposition testimony supporting its assertion that the height of the wall is required by law.  Further, the plain language of the statute does not indicate that the wall is mandated.  The statute states that unpackaged food must be displayed in "covered or otherwise protected containers."  *See* Cal. Health & Safety Code § 114080.  The statute does not dictate what constitutes covered or protected containers, and the prevalence of cafeteria and buffet-style restaurants in this state indicates that there are several ways in which restaurants can comply with this requirement.

1  Accordingly, the Court **FINDS** that Defendant has failed to demonstrate that the wall is

2  mandated by California Health and Safety Code § 114080.

3        After reviewing the ADAAG, the ADA's general anti-discrimination provisions, the state

4  building code, and the state health code, the Court **FINDS** that there are genuine issues of

5  material fact as to whether Defendant's food-preparation counters comply with state and federal

6  accessibility laws.  Accordingly, the Court **DENIES** Defendant's Motion for Summary

7  Judgment as to Plaintiff's ADA and state law claims regarding the food-preparation counters.

8        **B. The Parking at the San Diego Restaurant**

9        Defendant asserts that summary judgment against Plaintiff is appropriate because there is

10  no genuine issue of material fact that the curb ramp at the parking lot at the San Diego Restau-

11  rant complies with the ADA.  (Def.'s Mot. for Summ. J. at 7.)  Specifically, Defendant asserts

12  that the curb ramp does not interfere with the access aisle.[10]  (Shippey Decl. ¶ 6.)  Plaintiff

13  concedes that the parking lot at the San Diego restaurant currently complies with the ADA,

14  rendering his ADA claims as to the parking lot moot.  (Opp'n to Def.'s Mot. for Summ. J. at 18.)

15  However, Plaintiff asserts that his state law claims for damages relative to the parking lot remain

16  a live controversy.  (*Id.*)

17        ADAAG § 4.6.3 provides that "[p]arking spaces and access aisles shall be level with

18  surface slopes not exceeding 1:50 (2%) in all directions."  ADAAG § 4.6.3.  If the curb ramp at

19  the San Diego Restaurant extended into the access aisle, as Plaintiff asserts, this would constitute

20  a violation of ADAAG § 4.6.3 because the access aisle would not be level.  Plaintiff asserts that

21  he experienced problems with the parking at the San Diego restaurant because the curb ramp

22  extended into the disabled parking space and access aisle, causing his car to tilt.  (Antoninetti

23  Decl. ¶ 26.)   Plaintiff also provides deposition testimony stating that the curb ramp previously

24  extended into the access aisle.  (Blackseth Dep. 88:17-89:8.)  Defendant does not dispute

25  Plaintiff's assertion that the curb ramp previously extended into the access aisle, and instead

26  contends that Plaintiff's ADA claims are moot because Defendant has modified the curb ramp.

27  _____

28      [10] The ADAAG defines "access aisle" as "[a]n accessible pedestrian space between elements, such as parking spaces, seating, and desks, that provides clearances appropriate for use of the elements." ADAAG § 3.5.

(*See* Def.'s Mot. for Summ. J. at 7.)  Because Defendant has cured the defect, and because only injunctive relief is available to Plaintiff under the ADA, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's ADA claims regarding the parking at the San Diego Restaurant.  However, Plaintiff's state law claims are not moot because damages are still available.  *See Wilson v. Pier 1 Imports (US), Inc.*, 439 F. Supp. 2d 1054, 1069 (E.D. Cal. 2006).  The Court thus **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's state law claims regarding the parking at the San Diego Restaurant.

### C. The Parking at the Encinitas Restaurant

Defendant asserts that summary judgment against Plaintiff is appropriate because there is no genuine issue of material fact that the curb ramp at the parking lot at the Encinitas Restaurant complies with the ADA.  (*See* Def.'s Mot. for Summ. J. at 7.)  In support of this assertion, Defendant offers the declaration of its director of design, which states that the curb ramp does not interfere with the access aisle at the Encinitas Restaurant.  (*See* Shippey Decl. ¶ 8.)  Plaintiff concedes that the parking lot at the Encinitas restaurant currently complies with the ADA, rendering his ADA claims as to the parking lot moot.  (Opp'n to Def.'s Mot. for Summ. J. at 18.)  However, Plaintiff asserts that his state law claims for damages relative to the parking lot remain a live controversy.  (*Id.*)

As noted above, the extension of a curb ramp into an access aisle constitutes a violation of ADAAG § 4.6.3.  Plaintiff has set forth facts demonstrating that the curb ramp at the Encinitas restaurant previously extended into the access aisle.  (*See* Blackseth Dep. 89:12-17.)  Defendant does not dispute Plaintiff's assertion that the curb ramp previously extended into the access aisle, and instead contends that Plaintiff's ADA claims are moot because Defendant has modified the curb ramp.  (*See* Def.'s Mot. for Summ. J. at 7.)  Because Defendant has cured the defect, and because only injunctive relief is available to Plaintiff under the ADA, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's ADA claims regarding the parking at the Encinitas Restaurant.  However, Plaintiff's state law claims are not moot because damages are still available.  The Court thus **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's state law claims regarding the parking at the Encinitas Restaurant.

**D. The Entrances to the San Diego Restaurant**

Defendant asserts that summary judgment against Plaintiff is appropriate because there is no genuine issue of material fact that the signs posted at the entrances to its San Diego Restaurant comply with the ADA. (*See* Def.'s Mot. for Summ. J. at 7.)  In support of this assertion, Defendant offers the declaration of its director of design, which states that International Symbol of Accessibility signs are posted at all entrances to the San Diego Restaurant. (*See* Shippey Decl. ¶ 8.)  Although Plaintiff's Complaint alleges that Defendant's restaurants have "inaccessible entrances," Plaintiff is required to go beyond his pleadings and designate specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Other than the allegations in the Complaint, Plaintiff has failed to set forth any facts establishing that the entrances are inaccessible.  Finding no genuine issue of material fact, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's ADA and state law claims regarding the accessibility of the entrances to the San Diego Restaurant.

**E. The Men's Restrooms at the San Diego and Encinitas Restaurants**

Defendant asserts that summary judgment against Plaintiff is appropriate because there is no genuine issue of material fact that the men's restrooms at its San Diego and Encinitas Restaurants comply with the ADA. (Def.'s Mot. for Summ. J. at 7.)  Plaintiff concedes that Defendant has modified the restrooms to comply with the law. (Opp'n to Def.'s Mot. for Summ. J. at 18.)  Plaintiff also states that he does not seek damages in relation to the restroom barriers. (*Id.* at 18 n.4.)  Because Plaintiff seeks only injunctive relief for the restroom violations, and because Defendant has remedied these violations, Plaintiff's claims relating to the restrooms are moot.  The Court thus **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's ADA and state law claims regarding the restrooms at the San Diego and Encinitas Restaurants.

In sum, the Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's ADA and state law claims regarding the food-preparation counters.  The Court also **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's state law claims regarding the parking at the San Diego and Encinitas Restaurants.  The Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's ADA claims regarding the parking at the San Diego and

1    Encinitas Restaurants.  The Court also **GRANTS** Defendant's Motion for Summary Judgment as

2    to Plaintiff's claims relating to the entrances at the San Diego Restaurant and the bathrooms at

3    the San Diego and Encinitas Restaurants.

4    **II. Plaintiff's Motion for Summary Judgment**

5           Plaintiff's Motion for Summary Judgment asserts that he is entitled to summary adjudica-

6    tion regarding two basic areas of ADA noncompliance.  First, Plaintiff argues that there is no

7    genuine issue of material fact that Defendant's food-preparation counters violate the ADA.  (*See*

8    Pl.'s Mot. for Summ. J. at 17.)  Second, Plaintiff alleges that there is no genuine issue of material

9    fact that Defendant's restaurants committed technical violations of the ADAAG.  (*Id.*)

10          **A. Defendant's Food-Preparation Counters**

11          As noted in Section I.A.2.c of this Order, Defendant's food-preparation counters are

12   governed by ADAAG § 7.2, and there is a genuine issue of material fact as to whether Defen-

13   dant's Customers with Disabilities Policy provides equivalent facilitation to customers in

14   wheelchairs.  Accordingly, the Court **DENIES** Plaintiff's Motion for Summary Judgment as to

15   Defendant's food-preparation counters.

16          **B. The Parking at the San Diego Restaurant**

17          Plaintiff seeks summary judgment on his claim that the parking at the San Diego

18   Restaurant violated the ADA.  (Pl.'s Mot. for Summ. J. at 16.)  As noted above, Plaintiff

19   concedes that the parking at the San Diego restaurant currently complies with the ADA,

20   rendering his ADA claims for injunctive relief moot.  (Opp'n to Def.'s Mot. for Summ. J. at 18.)

21   The Court thus **DENIES** Plaintiff's Motion for Summary Judgment as to his ADA claims

22   regarding the parking at the San Diego Restaurant.  However, Plaintiff's state law claims for

23   damages relative to the parking lot remain a live controversy.  As discussed above, Plaintiff has

24   set forth facts establishing that the parking at Defendant's San Diego Restaurant violated the

25   ADAAG because the curb ramp extended into the access aisle.  (*See* Antoninetti Decl. ¶ 26;

26   Blackseth Dep. 88:17-89:8.)  Defendant has set forth no facts disputing that the parking at the

27   San Diego Restaurant previously violated the ADAAG.

28

23

A violation of the ADAAG also constitutes a violation of the California Unruh Civil Rights Act ("Unruh Act") and the California Disabled Persons Act ("DPA").  *See* Cal. Civ. Code §§ 51, 54.1.  Because it is undisputed that the parking at the San Diego Restaurant previously violated the ADAAG and, therefore, the Unruh Act and the DPA, the Court **GRANTS** Plaintiff's Motion for Summary Judgment as to his state law claims relating to the parking at the San Diego Restaurant.

### C. The Parking at the Encinitas Restaurant

Plaintiff seeks summary judgment on his claim that the parking at the Encinitas Restaurant violated the ADA.  (Pl.'s Mot. for Summ. J. at 16.)  As noted above, Plaintiff concedes that the parking lot at the Encinitas Restaurant currently complies with the ADA, rendering his ADA claims for injunctive relief moot.  (Opp'n to Def.'s Mot. for Summ. J. at 18.)  The Court thus **DENIES** Plaintiff's Motion for Summary Judgment as to his ADA claims regarding the parking at the Encinitas Restaurant.  However, Plaintiff's state law claims for damages relative to the parking lot remain a live controversy.  As discussed above, Plaintiff has set forth facts establishing that the parking at Defendant's Encinitas Restaurant violated the ADAAG because the curb ramp extended into the access aisle.  (*See* Blackseth Dep. 89:12-17.)  Defendant has set forth no facts disputing that the parking at the Encinitas Restaurant previously violated the ADAAG.

A violation of the ADAAG also constitutes a violation of the Unruh Act and the DPA. *See* Cal. Civ. Code §§ 51(f), 54.1(d).  Because it is undisputed that the parking lot at the Encinitas Restaurant previously violated the ADAAG and, therefore, the Unruh Act and the DPA, the Court **GRANTS** Plaintiff's Motion for Summary Judgment as to his state law claims relating to the parking at the Encinitas Restaurant.

### D. The Tables at the San Diego and Encinitas Restaurants

Plaintiff seeks summary judgment on his claim that the tables at the San Diego and Encinitas Restaurants violated the ADA.  (Pl.'s Mot. for Summ. J. at 16.)  However, Plaintiff's claims regarding the tables at the San Diego and Encinitas Restaurants were never included in the Complaint or any timely amendment to the Complaint.  Therefore, these claims are not part of this lawsuit and will not be addressed further.  *See Gospel Missions of Am. v. City of Los*

*Angeles*, 419 F.3d 1042, 1052 (9th Cir. 2005) (declining to consider claims not included in the complaint).  Accordingly, the Court **DENIES** Plaintiff's Motion for Summary Judgment as to his claims relating to the tables at the San Diego and Encinitas Restaurants.

In sum, the Court **DENIES** Plaintiff's Motion for Summary Judgment as to his claims relating to the tables and the food-preparation counters at the San Diego and Encinitas Restaurants.  The Court also **DENIES** Plaintiff's Motion for Summary Judgment as to his ADA claims relating to the parking at the San Diego and Encinitas Restaurants.  The Court **GRANTS** Plaintiff's Motion for Summary Judgment as to his state law claims relating to the parking at the San Diego and Encinitas Restaurants.

**III. Defendant's Motion to Strike**

Defendant moves to strike footnote 1 of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, arguing that the footnote disparages the ethics, morals, integrity, and behavior of Defendant and its employees.  (Mot. to Strike at 1-2.)  The footnote compares Defendant's policies to those of a hypothetical discriminatory bus company that requires female passengers to sit in the back of its buses.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 2 n.1.)  The Court, in formulating its decision, has not relied on, been influenced by, or made reference to this footnote.  Defendant's Motion to Strike is therefore **DENIED**.

*Conclusion*

The Court: (1) **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment; (2) **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment; (3) **DENIES** Defendant's Motion to Strike.

//

//

//

//

//

//

//

05CV1660 J (WMc)

The Court reserves judgment on the award of damages. Since Plaintiff's claims regarding the food-preparation counters have yet to be resolved, it appears premature for the Court to award damages. Once all claims are resolved, Plaintiff may move for an award of damages.

**IT IS SO ORDERED.**

DATED:  June 14, 2007

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc:   Magistrate Judge McCurine
      All Parties

05CV1660 J (WMc)