Amy B. Vandeveld, State Bar No. 137904
LAW OFFICES OF AMY B. VANDEVELD
1850 Fifth Avenue, Suite 22
San Diego, California 92101
Telephone: (619) 231-8883
Facsimile: (619) 231-8329

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURIZIO ANTONINETTI, <br><br> Plaintiff, <br><br> vs. <br><br> CHIPOTLE MEXICAN GRILL, INC. and DOES 1 THROUGH 10, Inclusive, <br><br> Defendants. | Case No.: 05 CV 1660 J (WMc) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** <br><br> Date: August 20, 2007 <br> Time: 9:00 a.m. <br> Courtroom: 12 <br> Judge: The Honorable Napoleon A.           Jones, Jr. |

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.     AUTHORITY FOR MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    The Court Erred as a Matter of Law When it Failed to Rule that Plaintiff's Rights Were Violated, Even Assuming the "Policy" Constitutes "Equivalent Facilitation". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          i.    Even if the "Policy" Constitutes "Equivalent Facilitation", Plaintiff was Denied Access.. . . . . . . . . . . . . . . . 2

          ii.   If the "Policy" Does Not Constitute "Equivalent Facilitation", Plaintiff was Denied Access. . . . . . . . . . . . . . . 3

      B.    The Court Erred as a Matter of Law When it Ruled that a Jury May be Entitled to Find that Chipotle's "Policy" Constitutes "Equivalent Facilitation." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.    Even if ADAAG Section 7.2(2)(iii) Applies, Chipotle Failed to Offer any Evidence Raising a Dispute of Fact on the Issue of "Equivalent Facilitation", Assuming This is A Jury Question.. . . . . . . . . . . . . . . 8

      D.    Even if ADAAG Section 7.2(2)(iii) Applies, There is No Dispute of Fact that Chipotle Failed to Actually *Implement* the "Accommodations" Which Would Support a Finding of "Equivalent Facilitation." . . . . . . . . . . 10

      E.    The Court Erred in Ruling that "Equivalent Facilitation" is an Issue to be Decided by the Jury. . . . . . . . . . . . . . . . . . . . . . . . . 10

          i.    Whether The Facts Support a Finding of "Equivalent Facilitation" is a Legal Determination to be Made by the Court. . . . . . . . . . . . . . . . . 10

          ii.   It is not "Full and Equal Access" if a Person with a Disability Simply Receives an Entree, Without the Opportunity to Participate In and Receive the Advantages, Privileges and Accommodations Which are Part of the "Chipotle Experience". . . . . . . . . . . . . 13

III.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**Cases**

*Caruso v. Blockbuster-Sony Music Entertainment Centre,*
    193 F.3d 730 (3rd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 8, 10, 11

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 322-23, 106 S. Ct. 2458, 91 L. Ed. 2d 265 (1986) . . . . . . . . . . . 8

*Fortyune v. AMC,*
    364 F.3d 1075 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Friends of the Earth , Inc. v. Laidlaw Envtl. Servs. (TOC),*
    528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 . . . . . . . . . . . . . . . . . . . 2

*Harper v. Wallingford,*
    877 F.2d 728 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Oregon Paralyzed Veterans v. Regal Cinemas,*
    339 F.3d 1126, (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Smith v. Massachusetts,*
    (2005) 543 US 462, 475, 125 S.Ct. 1129 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Concentrated Phosphate Export Ass'n,*
    393 U.S. 199, 203, 89 S. Ct. 361, 21 L. Ed. 2d 344 (1968) . . . . . . . . . . . . . . 2-3

*U.S. v. AMC Entertainment, Inc.,*
    232 F.Supp.2d 1092 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*U.S. v. AMC Entertainment, Inc.,*
    245 F.Supp.2d 1094 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Statutes- Federal**

42 U.S.C.  Section 12182 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
42 U.S.C. Section 12182(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15
42 U.S.C. Section 12182(b)(1)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
42 U.S.C. Section 12183 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Regulations**

*56 Fed.Reg.  at 2327* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*56 Fed. Reg. 35,413 (July 26, 1991)* (codified at 36 C.F.R. Pt. 1191, App. A.)  . . . . 5
28 C.F.R. Sec. 36.401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
28 C.F.R. Part 36 (Revised as of July 1, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**ADAAG**

Section 2.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 8, 9, 10, 12, 14
Section 7.2(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13, 14
Section 7.2(2)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 9, 14

**House Conference Reports**

H.Rep.No. 101-485(II) at 102. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
H.Rep.No. 101-485(III) at 57 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Technical Assistance Manual**

Technical Assistance Manual, III-7.2100  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Amy B. Vandeveld, State Bar No. 137904
LAW OFFICES OF AMY B. VANDEVELD
1850 Fifth Avenue, Suite 22
San Diego, California 92101
Telephone: (619) 231-8883
Facsimile: (619) 231-8329

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURIZIO ANTONINETTI<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CHIPOTLE MEXICAN GRILL, INC. and DOES 1 THROUGH 10, Inclusive,<br><br>　　　　Defendants. | Case No.: 05 CV 1660 J (WMc)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　August 20, 2007<br>Time:　9:00 a.m.<br>Courtroom:　12<br>Judge: The Honorable Napoleon A. Jones, Jr. |

　　　　Plaintiff, MAURIZIO ANTONINETTI, (hereinafter "Plaintiff"), hereby submits the following Memorandum of Points and Authorities in Support of his Motion for Reconsideration of the Court's Ruling on Plaintiff's Motion for Summary Judgment.

　　　　ANTONINETTI now respectfully moves this court for reconsideration of its ruling because: 1) the Court incorrectly interpreted and applied ADAAG Section 7.2(2)(iii) to the instant case; 2) the Court failed to enter judgment in Mr. Antoninetti's favor, based upon the undisputed facts, even assuming Section 7.2(2)(iii) is applicable to the instant case; and 3) the Court's ruling sets forth a lower legal standard for access than is required by the ADA and its implementing regulations.

1

# I.

# AUTHORITY FOR MOTION

A motion for reconsideration is appropriate where the legal reasoning is clearly wrong. Although the Federal Rules of Civil Procedure do not expressly authorize a motion for reconsideration, "a district court has *inherent power* to reconsider and modify its interlocutory orders prior to the entry of judgment." *See, Smith v. Massachusetts* (2005) 543 US 462, 475, 125 S.Ct. 1129, 1139 (emphasis added.)

# II.

# LEGAL ANALYSIS

**A.  The Court Erred as a Matter of Law When it Failed to Rule that Plaintiff's Rights Were Violated, Even Assuming the "Policy" Constitutes "Equivalent Facilitation".**

  **i.  Even if the "Policy" Constitutes "Equivalent Facilitation", Plaintiff was Denied Access.**

In its ruling, the Court held that a reasonable jury might find that Chipotle's policy of "handing sample cups to customers or displaying ingredients on an adjacent table" (hereinafter the "Policy") satisfies Chipotle's obligation for "equivalent facilitation" under ADAAG 7.2(2)(iii). (Order, Docket No. 129, 17: 17-19)  But even if the "Policy" could legally satisfy the "equivalent facilitation" standard (which Plaintiff contends is legal error), the Court erred when it failed to rule as a matter of law that, despite the existence of the "Policy", the undisputed facts establish that the "Policy" was never implemented with respect to Mr. Antoninetti. Indeed, Chipotle failed to present any evidence that Mr. Antoninetti was ever "handed sample cups" or that ingredients were ever "displayed for him at an adjacent table". (Docket No. 129, :17:17-19)

The Court further erred when it failed to rule that Chipotle had not satisfied its "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth , Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (quoting *United States v.*

*Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203, 89 S. Ct. 361, 21 L. Ed. 2d 344 (1968).)  Given the substantial and undisputed evidence that Chipotle ignored its "Policy" during visits by Mr. Antoninetti, by Ms. Bonica and by Mr. Blackseth, there is a great likelihood that the "Policy" will likewise be ignored in the future.

Chipotle admits that the "Policy" is simply the written memorialization of "that which Chipotle has always done informally." (Chipotle SUF, Docket No. 95, Fact No. 33.) This "Policy", then, was in effect during Mr. Antoninetti's earlier visits, when he was never handed food samples or shown any of the food ingredients, when he never had the opportunity to see his food assembled at an adjacent table.  This "Policy" was also in effect during visits by Chipotle's own expert, Kim Blackseth, when he was never handed food samples and never shown any ingredients.

Given the undisputed facts before the Court, the Court committed legal error when it failed to order that Plaintiff's rights to full and equal access were violated and that the only remaining issue to be decided by the jury (if any) is relative to the remedial measures to be ordered by the Court.  That is, even if the jury determines that the "Policy" constitutes "equivalent facilitation", it is undisputed that it was not implemented with respect to Mr. Antoninetti  (Plaintiff's Separate Statement of Undisputed Facts (hereinafter "SSUF") Nos. 55 - 68).  The only remaining issue that should have been reserved by the Court is the nature of the injunctive relief to be ordered, to be determined after a trial solely on the issue of "equivalent facilitation" (if any such trial is held).

**ii.     If the "Policy" Does Not Constitute "Equivalent Facilitation", Plaintiff was Denied Access.**

If the "Policy" is NOT "equivalent facilitation", it is indisputable that the Plaintiff was denied access.  The sole remaining issue, again, is the remediation to be ordered by the Court - the lowering of the offending wall or the replacement of the wall with transparent material.

The Court erred when it failed to find that Plaintiff's rights had been violated,

3

1  even though it might reserve the issue of remediation following a trial on the issue of
2  "equivalent facilitation."

3  B. **The Court Erred as a Matter of Law When it Ruled that a Jury May be Entitled to Find that Chipotle's "Policy" Constitutes "Equivalent Facilitation."**

6  The Court ruled that Section 7.2(2) of the ADAAG applies to the food viewing and preparation areas at Chipotle's restaurants. The Court noted that this Section provides three options for compliance: (i) providing a lowered portion of the main counter; (ii) providing an auxiliary counter; or (iii) providing equivalent facilitation. The Plaintiff agrees with the Court's analysis that options (i) and (ii) are unavailable to Chipotle.

12  The Court committed clear error, however, when it ruled that Defendant might satisfy its obligations under Section 7.2(2)(iii) if a jury finds that Chipotle's "Policy" provides "equivalent facilitation". (Docket No.129, 17:17-19)  The Court's ruling that "equivalent facilitation" can include alternative methods of service, such as implementation of the "Policy", is contrary to the specific language of Sec. 2.2.

17  Interpretation of "equivalent facilitation" in the manner suggested by the Court, for example, would allow a public accommodation to avoid an obligation to provide a curb ramp (a design element) as long as it had a policy of "equivalent facilitation" that involved lifting wheelchair users up a curb barrier. This is so clearly anathema to the intent and purpose of the ADA that not only would such a policy fail to meet the standard of "equivalent facilitation", but even *portable* ramps fail to satisfy this standard. (See Technical Assistance Manual, III-7.2100: "portable ramps are not considered equivalent facilitation.")

25  The ADAAG does not address policies, practices or procedures. It addresses design and technologies. Indeed, allowing a public accommodation to avoid its accessible design obligations by implementation of an "access policy" vitiates the purpose and intent of the ADA and its requirement that new facilities be constructed so

that they are accessible to and usable by people with disabilities.

More specifically, ADAAG Section 2.2 defines "equivalent facilitation" as follows:

> "Departures from particular technical and scoping requirements of this guideline by the use of other *designs and technologies* are permitted where the alternative designs and technologies used will provide substantially equivalent or greater access to and usability of the facility." (Emphasis added.)

Section 2.2 clearly allows alternative designs and technologies. It does not allow a defendant to design a new facility in an inaccessible manner as long as the defendant adopts a "policy" to accommodate people with disabilities in the face of that inaccessible design. When initially proposed, section 2.2 read, "Departures from particular technical and scoping requirements of this guideline by the use of other *methods* are permitted where the alternative methods used will provide substantially equivalent or greater access to and usability of the facility." 56 Fed. Reg. at 2327. (Emphasis added.) Following a notice and comment period, the phrase "design and technologies" was substituted for the word "methods." The Access Board explained that "[t]he purpose of the provision is to allow for flexibility to design for unique and special circumstances and to facilitate the application of new technologies." 56 Fed. Reg. at 35,413.

In *U.S. v. AMC Entertainment, Inc.*, 245 F.Supp.2d 1094 (C.D. Cal. 2003), the Court considered the defense argument that it had provided equivalent facilitation with respect to deviations from the design requirements of the ADAAG. The Court noted that Section 2.2 of the ADAAG addresses alternative "designs and technologies" and stated:

> "There is no evidence that the documented violations were the result of designs and technologies that were implemented in order to provide substantially equivalent or greater access to and usability of the facility. Nor is there evidence that any of the documented violations have resulted in greater access to the theaters."

*US v. AMC*, 245 F.Supp.2d at 1101.

5

In *Caruso v. Blockbuster-Sony Music Entertainment Centre,* 193 F.3d 730 (3rd Cir. 1999), the Court addressed the application of "equivalent facilitation" specifically in the context of new construction. In that case, the defendant E-Centre argued that it had provided "equivalent facilitation" for wheelchair users by placing additional wheelchair locations in an interior pavilion. The Circuit Court reversed summary judgment in favor of the E-Centre and held that the E-Centre could not rely upon the "equivalent facilitation" provision of ADAAG Sec. 2.2:

> The principal problem with the E-Centre's "equivalent facilitation" argument is that it treats the ADA's requirement of equal access for people with disabilities as a "particular technical and scoping requirement." This is simply not the case. ***Rather, equal access is an explicit requirement of both the statute itself and the general provisions of the DOJ's regulations. See 42 U.S.C. § 12183; 28 C.F.R. § 36.401***. Properly read, the "Equivalent Facilitation" provision ***does not allow facilities to deny access*** under certain circumstances, but instead allows facilities to bypass the technical requirements laid out in the Standards when alternative designs will provide "equivalent or greater access to and usability of the facility." Therefore, we conclude that the E-Centre cannot rely on the "Equivalent Facilitation" provision to excuse its failure to provide any wheelchair access to an assembly area that accommodates 18,000 people.

*Caruso*, 193 F.3d at 739. (Emphasis added.)

The *Caruso* Court did not consider ADAAG Sec. 2.2 in a vacuum. Instead, it concluded that, in determining whether "equivalent facilitation" was actually provided, the general prohibitions of discrimination needed to be considered in conjunction with Sec. 2.2:

> Furthermore, as noted by Caruso in his appellate brief, ***the language of Title III itself precludes a reading of the "Equivalent Facilitation" provision that would allow venues to restrict wheelchair access to certain areas based on a belief that wheelchair users will be better off elsewhere.*** See 42 U.S.C. § 12182(b)(1)(A)(iii) (discriminatory to provide a separate benefit unless necessary to provide equal benefit); id. at (b)(1)(B) (benefits of a public accommodation must be provided in the most integrated setting appropriate to the needs of the individual). As the DOJ explains in its commentary:

6

> Taken together, [the statutory and regulatory provisions concerning separate benefits and integrated settings] are intended to prohibit exclusion and segregation of individuals with disabilities and the denial of equal opportunities enjoyed by others, based on, among other things, presumptions, patronizing attitudes, fears, and stereotypes about individuals with disabilities. Consistent with these standards, public accommodations are required to make decisions based on facts applicable to individuals and not on the basis of presumptions as to what a class of individuals with disabilities can or cannot do. . . . Separate, special, or different programs that are designed to provide a benefit to persons with disabilities cannot be used to restrict the participation of persons with disabilities in general, integrated activities.

*Caruso,* 193 F.3d at 739, citing 28 C.F.R. § 36, App. B., at 622.

In the instant case, Chipotle designed an otherwise accessible food viewing area with a four-foot high wall that blocks the view of people in wheelchairs. Chipotle purposely and intentionally designed the *primary* element of its restaurant so that is inaccessible to wheelchair users. Nothing can be more plain. Chipotle sells food. Customers are intended to be enticed by the display of food. The appearance of the food is paramount to Chipotle's business model. The ability of customers to see the appetizing food and to direct the making of their entrees, fast, is what Chipotle is "all about".

Standing customers experience the privileges and advantages of seeing enticing ingredients displayed in an appetizing manner. They get to see the actual construction of their entrees as they travel along the quickly moving ordering line and they can determine if they want more or less of an ingredient. All this occurs along the food selection and preparation line.

Chipotle's "Policy" of offering a *different* accommodation to people in wheelchairs (food shown or provided in small, plastic cups or displayed at adjacent tables) is a different benefit provided in a separate, non-integrated fashion. ***It is a method of accommodation intended to compensate for an intentionally inaccessible***

7

*design.*

If Chipotle had designed the food preparation area so that none of its customers could see the food items on display, or the making of their entrees, and if Chipotle offered only sample cups of food to all of its customers on a high counter, then providing those cups at an adjacent, readily available table might constitute "equivalent facilitation". In that event, standing customers and customers in wheelchairs are receiving the same benefits, opportunities, advantages, accommodations and privileges - sample cups filled with food. The only difference is the design of the two counters.

Instead of providing access to wheelchair users at its food viewing area, Chipotle contends that it has adopted a "Policy" of putting food in sample cups and offering to make entrees at an adjacent table, to "accommodate" for its inaccessible design. Pursuant to the holding in *Caruso*, however, the "equivalent facilitation" provision is not intended to allow Chipotle to deny access through its design as long as it comes up with a "policy of accommodation." Chipotle's justification for failing to design a food viewing counter that is accessible to people with disabilities "appear(s) to give precisely the type of justification that the DOJ commentary finds repugnant to the ADA..." *Caruso*, at 739.

**C. Even if ADAAG Section 7.2(2)(iii) Applies, Chipotle Failed to Offer any Evidence Raising a Dispute of Fact on the Issue of "Equivalent Facilitation", Assuming This is A Jury Question.**

The moving party's burden on summary judgment is not an evidentiary burden. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2458, 91 L. Ed. 2d 265 (1986). Rather, it is sufficient that the moving party point to an absence of evidence as to an issue upon which the nonmoving party bears the burden at trial. *US v. AMC Entertainment, Inc.*, 232 F.Supp.2d 1092, 1098-1099 (C.D. Cal. 2003). The adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial." Fed. R. Civ.

8

1  P. 56(e). Mere disagreement or the bald assertion that a genuine issue of material fact
2  exists does not preclude the use of summary judgment. *Harper v. Wallingford*, 877 F.2d
3  728 (9th Cir. 1989).
4        In the instant case, the Court erred, as a matter of law, because even assuming
5  that the "equivalent facilitation" alternative allowed by ADAAG Section 2.2 would
6  include the adoption of a policy such as Chipotle's, and even assuming whether or not
7  that "Policy" constitutes "equivalent facilitation" is a question for the jury, Chipotle
8  failed to offer any factual evidence that the "Policy" actually provides "equivalent
9  facilitation."
10       In fact, the only evidence offered by Chipotle in support of its Motion for
11 Summary Judgment, or in opposition to Plaintiff's Motion for Summary Judgment, is a
12 statement from one of its witnesses that it **_has_** such a policy. The mere *existence* of a
13 policy, however, fails to establish a question of fact with respect to the actual effect of
14 the policy. Nor does evidence of the *existence* of a policy establish that the policy is
15 actually implemented.
16       There is no *evidence* before the Court that these sorts of "accommodations" in
17 any way approximate the experience that standing customers have with respect to
18 viewing, judging and selecting food items. No declarations from witnesses that small,
19 plastic cups filled with food is as appetizing as seeing large bins of heated, steaming
20 ingredients. No photographs depicting the contents of a sample cup filled with food in
21 comparison to the overflowing bins of chicken, barbacoa, beef. No video showing the
22 filling of 16 sample cups, the traipsing of the sample cups to an adjacent table, the
23 construction of an entree from those 16 sample cups. No evidence at all that refutes
24 Chipotle's own witnesses who testified that seeing the freshness of food is important to
25 the "Chipotle experience" and that freshness cannot be determined by viewing food in
26 sample cups. (SSUF Nos. 26 and 39) Who testified that it can take 5 minutes if
27 ingredients were taken to an adjacent table for a wheelchair user. (SSUF No. 81)
28       In short, there is NO actual evidence supporting Chipotle's statement that it's

"Policy" provides its customers with "a dining experience comparable to that of able-bodied customers". Thus, there is no competing evidence to be considered by a jury.

**D.   Even if ADAAG Section 7.2(2)(iii) Applies, There is No Dispute of Fact that Chipotle Failed to Actually *Implement* the "Accommodations" Which Would Support a Finding of "Equivalent Facilitation."**

The Court also erred, as a matter of law, because even assuming that the "equivalent facilitation" alternative allowed by ADAAG Section 2.2 would include the adoption of a policy such as Chipotle's, Chipotle failed to offer any evidence that its "Policy" actually is or ever has been implemented with respect to Mr. Antoninetti or with respect to any other customer.

In this case, there is no *evidence* that Chipotle actually hands sample cups of food to people in wheelchairs. There is no *evidence* that Chipotle actually displays ingredients at adjacent tables. To the contrary, the site inspection DVDs show that, at most, Chipotle only raises cups of food (or spoonfuls or handfuls) above the sneeze bar, several feet above the heads of people in wheelchairs, and does so only during formal site inspections and only when a person in a wheelchair asks to see the food. Even Chipotle's own expert testified that he was never shown any food samples, never had his burrito made in front of him. Thus, even if the "Policy" constitutes "equivalent facilitation", the Court should have ruled that Plaintiff's rights were violated, while reserving the issue of injunctive relief following the trial (if any).

**E.   The Court Erred in Ruling that "Equivalent Facilitation" is an Issue to be Decided by the Jury.**

    **i.   Whether The Facts Support a Finding of "Equivalent Facilitation" is a Legal Determination to be Made by the Court.**

In *Caruso v. Blockbuster-Sony, supra*, the Defendant E-Centre filed a motion for summary judgment contending, in part, that it was not required to provide access for people in wheelchairs to a lawn area because, pursuant to ADAAG Sec. 2.2, it had provided "equivalent facilitation" by placing additional wheelchair locations in an

interior pavilion which provided "higher quality (i.e. closer) seats in the pavilion." *Caruso*, at 739-740. The *Caruso* Appellate Court explicitly rejected the E-Centre's contention "as inconsistent with the plain language of Title III", citing 42 U.S.C Sec. 12182(b)(1)(c), which states that "an individual with a disability shall not be denied the opportunity to participate in programs or activities that are not separate or different." *Caruso*, at 740.

Thus, even if the question of "equivalent facilitation" had wrongly gone to a jury in the *Caruso* case, and the jury found, as argued by the E-Centre, that the pavilion seats were "higher quality and closer", it was not within the province of the jury to determine that those higher quality, closer seats constituted "equivalent facilitation." To the contrary, in the context of new construction, the determination of whether "equivalent facilitation" has been provided is to be determined by the Court, in reference to the equal access requirements of 42 U.S.C. Sec. 12182, 42 U.S.C. Sec. 12183 and 28 C.F.R. Sec. 36.401. *See, Caruso*, at 739.

The *Caruso* Court noted that, even if the pavilion wheelchair locations were closer and "higher quality", they were separate and non-integrated benefits, precluded by 42 U.S.C. Sec. 12182. (In fact, the Appellate Court held that "the only way the E-Centre could justify its failure to provide access to the lawn area is by showing structural impracticability." *Caruso*, at 740.)

The importance of the requirement that people with disabilities are to be afforded the *same* opportunities, the *same* benefits, the *same* privileges, is illustrated by Congress' discussion of Section 302 of the ADA:

> ... (t)he Committee wishes to reaffirm that individuals with disabilities cannot be denied the opportunity to participate in programs that are not separate *or different. **This is an important and over-arching principle of the Committee's bill**. ...* For example, a blind person may wish to decline to participate in a special museum tour that allows persons to touch sculptures in an exhibit and instead tour the exhibit at his or her own pace with the museum's guided tour.

H. Rpt. No. 101-485(II), page 102. (Emphasis added.)

11

Congress again affirmed this important principle:

> "It is critical that the existence of separate specialized services never be used as justification for exclusion from programs that are not separate or different. For example, the existence of a special art program for persons who are developmentally disabled must not be used as a reason to reject an individual who is retarded from the regular art class f that person prefers to participate in the regular art class.

H. Rprt. No. 101-485(III), page 57.

Chipotle may offer the opportunity to view its food to people in wheelchairs. But it does so by limiting wheelchair users to viewing the food in tiny, plastic cups, by holding tongfuls or handfuls of food for viewing. This is just as *different* as providing a "special" art class for persons with disabilities. Chipotle may offer wheelchair users the opportunity to see the making of their burritos, but only after five minutes of filling 16 small plastic cups and traipsing them to an adjacent customer table, if a table is even available. This, too, is as *different* from what is offered standing customers, as is the "special" art class. "Different" accommodations are clearly NOT allowed under the ADA.

Since the facts are undisputed as to the "accommodations" provided by Chipotle, the Court should have determined, as a matter of law, that those "accommodations" provide separate and different benefits to people with disabilities and, therefore, cannot satisfy the "equivalent facilitation" option provided by ADAAG Sec. 2.2.

In this case, there are no questions of fact to be determined by a jury. The only questions that might be appropriate for jury determination are: 1) whether Chipotle offers its customers the privilege of seeing appetizing, mouth-watering bins of food (undisputed that they do); 2) whether the customer's advantage of being able to see the quality, appearance and freshness of the food is an important aspect of Chipotle's business model (undisputed that it is); 3) whether Chipotle actually provides sample cups of food for people in wheelchairs (undisputed that the only time food was ever shown to Mr. Antoninetti was during the site inspections); 4) whether Chipotle provides

12

its customers with the privilege of seeing their entrees constructed "right in front" of them (undisputed that it does); 5) whether wheelchair users have ever been provided the opportunity to enjoy this privilege (undisputed that this has never happened, not even during site inspections); 6) whether seeing food in cold, plastic sample cups is appetizing (undisputed that it is not); 7) whether showing food in sample cups allows wheelchair users to judge the freshness of the food (undisputed that it does not).

These are appropriate questions for the jury. When the disputes of these facts are resolved, either by a jury or by way of a motion for summary judgment, the issue of whether these facts constitutes "equivalent facilitation" is a legal question.

Just as the *Caruso* Court determined that closer pavilion seats were not "equivalent facilitation", the Court, in this case, should have made a decision, one way or the other, on the issue of whether showing food in sample cups, taking food to adjacent tables, etc. constitutes "equivalent facilitation", assuming "the Policy" can be included within the scope of that definition.

      **ii.**    **It is not "Full and Equal Access" if a Person with a Disability Simply Receives an Entree, Without the Opportunity to Participate In and Receive the Advantages, Privileges and Accommodations Which are Part of the "Chipotle Experience".**

Perhaps most clearly erroneous is the Court's ruling that all that may be legally required of Chipotle is that an entree was ordered and received by a person in a wheelchair. (Docket No. 129, 17:19-20) Such a ruling completely discounts and voids the importance of the uncontroverted evidence that the "Chipotle experience" is specifically intended to include the advantage of being able to see all of the available food items, to have the privilege of enjoying the appetizing appearance of the food, to have the advantage of judging the freshness of the items, to have the privilege of "seeing, selecting and directing" the making of a perfect burrito, to have the advantage of being able to actually see the preparation of one's entree so that one can order more or less of an ingredient and to have the privilege of getting one's food "fast".

42 U.S.C. Sec. 12182(a), the general anti-discrimination provision, does not limit

Chipotle's obligation to provide full and equal access to simply its goods and services. It also requires full and equal ***"enjoyment"*** of the ***"facilities, privileges, advantages, or accommodations"*** provided by Chipotle. The opportunity to see tantalizing bins of food is a privilege, not a good or service. The opportunity to "see, select and direct" the making of the perfect burrito is an advantage, not a good or service. The opportunity to order and receive one's food "fast", is also an advantage, not a benefit or service.

ADAAG Sec. 7.2(2) simply addresses counters where goods and services are provided.[1] Chipotle's food viewing area and the "Chipotle experience", however, offer much more than simply goods and services. For that reason, alone, ADAAG Sec. 7.2(2) is inapplicable. But even if Sec. 7.2(2)(iii) *is* applicable, when applying the "equivalent facilitation" provision of ADAAG Sec. 2.2, the Court was required to determine whether the "Policy" provides full and equal enjoyment of all that is embraced by the ADA, including the privileges, advantages, accommodations.

Our Ninth Circuit has provided specific instruction that Courts are not to read, interpret and apply the ADAAG in a vacuum. Instead, the general anti-discrimination provisions are to be considered in the interpretation and application of ADAAG regulations.

In *Fortyune v. AMC,* 364 F.3d 1075 (9th Cir. 2004), the Ninth Circuit considered the issue of whether a defendant movie theater had met its obligations for providing full and equal access since it provided a wheelchair location and companion seat which complied with the ADAAG. One of the very first things the Court discussed is the general purpose and intent of the ADA:

> Title III of the ADA prohibits discrimination in public accommodations and establishes a "general rule" that:
>
> > No individual shall be discriminated against on the basis of disability in the full and equal

---

[1] The Court erroneously holds that ADAAG Secs. 7.2(1) and 7.2(2) include the phrase "In areas used for transactions..." No such language exists in these Sections. (*See* 28 CFR Part 36, Revised as of July 1, 1994.)

> enjoyment of the goods, services, ***facilities, privileges, advantages, or accommodations*** of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

*Fortyune,* at 1080.

In affirming the District Court's grant of summary judgment in favor of the disabled Plaintiff, the Ninth Circuit noted that, despite defendant's compliance with the ADAAG , "Title III also prohibits places of public accommodation from denying disabled individuals "the opportunity . . . to participate in or benefit from the goods, services, ***facilities, privileges, advantages, or accommodations*** of an entity." (Citing § 12182(b)(1)(A)(I).) *See, Fortyune,* at 1081 (emphasis added).

In *Oregon Paralyzed Veterans v. Regal Cinemas*, 339 F.3d 1126 (9th Cir. 2003), the Court was charged with interpreting and applying ADAAG Sec. 4.33.3, specifically with respect to the issue of "comparable lines of sight." The Court did not simply consider the language of the ADAAG provision. It also considered and relied upon the general anti-discrimination provisions of the ADA in reaching its decision. In accepting the Department of Justice's interpretation of Sec. 4.33.3, our Ninth Circuit noted that the primary goals of the ADA, set forth at 42 USC Sec, 12182(a), would be furthered:

> One of the central goals of Title III of the ADA is to ensure that people with disabilities have access to "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). In the theaters at issue in this case, wheelchair-bound movie theater patrons must sit in seats that are objectively uncomfortable, requiring them to crane their necks and twist their bodies in order to see the screen, while non-disabled patrons have a wide range of comfortable viewing locations from which to choose. We find it simply inconceivable that this arrangement could constitute "full and equal enjoyment" of movie theater services by disabled patrons.

In the instant case, the Court erred when it ruled that "equivalent facilitation" could be achieved by virtue of the fact that a person in a wheelchair simply ordered a chicken burrito and got one. Such a ruling is legally erroneous because it voids the obligation to provide full and equal enjoyment of the privileges, advantages and

accommodations which are offered by Chipotle and which comprise the "Chipotle experience."

### III.

### CONCLUSION

Plaintiff respectfully requests that the Court reconsider its ruling on Plaintiff's Motion for Summary Judgment, due to the several legal errors in the Court's decision. The Plaintiff further respectfully requests that the Court enter judgment in his favor on the issue of liability with respect to his discrimination claims, while preserving the issue of injunctive relief to be ordered by the Court.

DATED: July 16, 2007         LAW OFFICES OF AMY B. VANDEVELD

/S AMY B. VANDEVELD
Attorney for Plaintiff
email: abvusdc@hotmail.com